GEORGE W. COLLAMER v. JAMES R. LANGDON and CHARLES B. JOHNSON.

*Quit-claim of mortgaged premises by administrator of mortgagee. Payment by note.*

The administrator upon the estate of a mortgagee, may without any order from the probate court, discharge the mortgage, or assign the interest of the estate in the mortgaged premises.

The legal effect of a quit-claim deed of mortgaged premises from the mortgagee, or from the administrator upon his estate, is to convey the legal estate which the mortgagee had in them.

*Held*, if the legal effect of such a deed could be obviated by parol proof, showing that a satisfaction and discharge of the mortgage was intended instead of a purchase, that there was no evidence in the present case tending to show such an intention, and that therefore the submission of such a question to the jury was improper.

The taking of a note for the amount of a debt is presumptive evidence of the payment of the debt; but this presumption may be rebutted by proof that the note was taken only as collateral security.

EJECTMENT. The premises in dispute were a part of a lot of land in Montpelier, which was deeded on the 17th of May, 1831, by Jonathan Arms to Luman and Norman Rublee and Otis Standish, and by them mortgaged back to Arms to secure the payment of certain notes described in the mortgage deed. In January 1834, the lot of land so deeded was divided between the assigns of Standish and the Rublees, and that part of it which embraced the premises in dispute was conveyed to the Rublees; and they, in the following June, conveyed a part of the lot divided to them, covering that portion of it for the recovery of which this suit was brought, to one Ebenezer Colburn; and this part of the lot was regularly conveyed through a succession of grantees from Colburn to the plaintiff; and in September, 1835, the Rublees conveyed to one Moses E. Hale another part of their lot, to which part the defendant Langdon had become entitled under a foreclosed mortgage from said Hale. At the time of the conveyance to Colburn there was six hundred and fourteen dollars due on the mortgage to Arms, which, as between Standish and the Rublees, belonged to the latter to pay, and this sum Colburn was to pay as a part of the consideration for his deed, and in his deed it was so specified.

Colburn also gave a mortgage to secure the payment of said six hundred and fourteen dollars, and of the further sum of one hundred and fifty dollars, to be paid to the said Rublees, upon the non-payment of which they obtained a decree of foreclosure, and the amount decreed was paid and satisfied to them by one of the intermediate grantees between Colburn and the plaintiff on the 26th of August, 1839 ; and they thereafter undertook to meet the payments falling due on the Arms mortgage, which had been fore-closed at the April Term, 1836, upon a bill brought by Jonathan P. Miller as administrator upon the estate of the said Arms, who was then deceased, against the Rublees and Hale. This foreclosure covered all the premises embraced in the Arms mortgage, and required the amount remaining due to be paid by installments, the last of which became due on the 1st of April, 1841.

The cause was tried by jury upon the plea of the general issue, at the March Term, 1856,—POLAND, J., presiding.

The defendants were in the possession of the premises sued for, which they occupied in common with those to which the defendant Langdon had obtained a title under Hale, and they claimed to hold the premises in dispute under the original mortgage to Arms, which they produced, together with the notes therein described, and they further introduced in evidence a quit-claim deed of all the premises described in the mortgage which was executed by said Miller, as administrator to the defendant Langdon, on the 10th of March, 1845. The defendants also introduced evidence tending to show that the said Arms' mortgage and notes were put into the hands of Joseph Reed as trustee for certain heirs for whom said Arms had been trustee ; that on the first day of April, 1841, when the last payment on the mortgage became due, said Rublee was wholly unable to meet the same and he so informed Langdon, and also that it belonged to said Colburn property to pay the balance due, and that said Langdon, to protect his share of the property, pur-chased said mortgage of said Miller and Reed, and paid therefor the balance then due thereon, amounting to one hundred and seven-teen dollars, and that said Reed thereupon delivered to him said mortgage and notes. No assignment was written on the mortgage and no endorsement was made upon the notes ; but a line of the following tenor was given, viz :

4

"Col. J. P. Miller: You will quit-claim to J. R. Langdon the land mortgaged to secure the notes you let me have against L. Rublee and others, as I have no further claim on them.

(Signed) JOSEPH REED."

It appeared that Langdon, some time in the summer of 1841, called on one Denton, who then owned the Colburn premises and under whom the plaintiff held, and notified him that said mortgage was unpaid, and that he had purchased the same; and claimed that said Denton should pay the balance due thereon; that said Denton said he supposed he had paid all that belonged to him to pay, but referred him to Mr. Cottrill, his agent, and Mr. Upham, his attorney, who had charge of said property, for an examination of the matter; that said Langdon, from said first day of April, 1841, always claimed said mortgage as a subsisting incumbrance on said premises; that he notified the occupants of said premises under Denton a number of times of his said mortgage imcumbrance; and that he always claimed to hold possession of the premises which the defendants occupy, under his title deeds, and that the balance due on said Arms' mortgage had never been paid by said Colburn, or any other person.

The plaintiff introduced in evidence a mortgage deed, executed by Luman Rublee to Langdon, dated February 5, 1842, to secure two notes of that date, one for fifty dollars and interest, and the other for one hundred and seventeen dollars with interest from the first of April, 1841, together with evidence tending to show that said last named note was given for the amount paid by said Langdon to said Reed.

The defendants then introduced evidence tending to show that Luman Rublee was in failing circumstances; that his creditors had attached his property; that he had just given a mortgage to one Silas Burbank of his real estate; that by the direction and advice of Mr. Upham, as the attorney of said Denton, and with his assurance that it could not prejudice Langdon, he, Langdon, took said Rublee's last named note and mortgage as collateral security, and in no other way, and that he did not give up or in any way cancel the Arms mortgage and notes; that said mortgage turned out to be wholly worthless, the premises not being of sufficient value to pay the previous attachments and mortgages thereon; that said

Rublee was wholly insolvent, and that his said note remained wholly unpaid, without any fault or laches on the part of Langdon. There was no testimony tending to show that the transaction between Langdon and said Reed and Miller, or that the taking of the note and mortgage of Luman Rublee by Langdon was intended as a technical payment of the Arms mortgage, otherwise than what might be inferred from the various circumstances attending the transaction, as follows: The plaintiff insisted that when Langdon paid the amount due on the old Arms notes, (one hundred and seventeen dollars,) to Judge Reed, and received the notes and mortgage from him, that it was not understood and intended as a pur-- chase at the time, but was understood and intended at that time as a payment and extinguishment of the Arms mortgage, and that Langdon did not, at that time, intend to keep it on foot as a sub-sisting incumbrance on the premises. That no transfer was made of the notes, or assignment of the mortgage; that a quit-claim deed was taken from Miller instead of an assignment; that the quit-claim was not taken for so long time after the notes were paid; that the quit-claim was not recorded, and that Langdon took no steps to assert his claim under. the mortgage for so many years, were the circumstances relied on, which, in the opinion of the court, had some legal tendency to establish what the plaintiff claimed on this point. The plaintiff also claimed that when Langdon took the note of Rublee for the amount paid by him to Reed, that this was taken in payment and extinguishment of the amount so paid by him, and relied upon the circumstances attending that transaction as tending to prove such conclusion.

The court charged the jury that if any part of the one hundred and seventeen dollars due on the Arms mortgage belonged to the plaintiff's part of the premises to pay, the defendant Langdon might become the purchaser and assignee of the mortgage, so as to set up a legal title in himself to the plaintiff's part of the premises under it; that as there seemed to be no question but that a part at least of this sum did belong to the plaintiff's part of the premises to pay; the question for them to decide upon the evidence was, whether when Langdon paid the one hundred and seventeen dollars to Judge Reed and took the Arms notes and mortgage from him, it was intended and understood as a purchase by him and an assign-

ment of the mortgage to him, or whether it was understood and designed as a payment and extinguishment of the mortgage, with no intent to keep the same on foot as a subsisting incumbrance on the premises; that if they found it to be a purchase, with a design to keep the same on foot as an incumbrance on the land, then the defendants could legally hold possession of such part of the plaintiff's portion of the premises as they were in possession of until said mortgage was in some way discharged; but that if they found that Langdon did not intend a purchase of the mortgage, but to pay and discharge it, and took the deed from Miller to cut off and discharge it, he could not now change the character of the transaction and turn it into a legal title, and the plaintiff would be entitled to recover; and that if they found Langdon to be a purchaser and assignee of the mortgage, then the defendants would be entitled to a verdict, unless the plaintiff should establish that the mortgage had since been legally satisfied in some way, and that this would depend upon the purpose for which Rublee's note was taken by Langdon; that if they found it was taken, as the plaintiff claimed, in payment and satisfaction of this amount at the time, then it would discharge Langdon's claim under the mortgage, but if it was taken merely as a collateral or additional security, it would have no such effect, as it was conceded the same had never been paid.

Under this charge, to which the defendants excepted, the jury returned a verdict for the plaintiff.

*O. H. Smith*, for the defendants.

I. The court erred in their charge in relation to the payment made by Langdon to Reed, and the quit-claim deed from Miller to Langdon.

"When a deed may enure to diverse purposes, he to whom the deed is made shall have an election how to take it, and he may take it that way as shall be most for his advantage. Shep. Touch, 83 ;" Co. Litt. 301 *b.* ; Sir R. Heyward's case, Co. Abr. 19.

Merger depends upon the intention of the party. If it is for the interest of the party to uphold a charge, *an interest to do so will be presumed and no merger will take place. Compton* v. *Oxenden*, 2 Vesey jr. 263 ; *Forbes* v. *Moffat*, 18 Vesey 384 ; *Chandas* v. *Talbat*, 2 P. Wms. 601 ; *Walker et al.* v. *Baxter et al.*, 26 Vt. 710.

When the purchaser of a right to redeem takes an assignment, this shall or shall not operate as an extinguishment of the mortgage, *according as the interest of the parties may be,* and according to the real intent of the parties. *Gibson* v. *Crehose,* 3 Pick. 475; *Hunt* v. *Hunt,* 14 Pick. 374; *Myers* v. *Brownell,* 1 D. Chip. 448; *Marshall* v. *Wood et al.,* 5 Vt. 250; *James* v. *Morey,* 2 Cowen 284; *Bullard* v. *Leach,* 27 Vt. 491.

Where two persons are severally seized of two distinct parcels of a tract of land which is under mortgage to a third person, one of them may pay the mortgage money and take an assignment of the mortgage, and hold all the land until the other pays his reasonable contribution. *Taylor* v. *Bassett,* 3 N. H. 294; *Robinson et al.* v. *Leavitt,* 7 N. H. 99, 109; *Wilson* v. *Kimball,* 7 Foster 300.

Under the charge of the court the defendants lost the benefit of all the presumptions of law to which they were entitled, and they were virtually required to prove affirmatively that the transaction was specifically a purchase and an assignment of the Arms mortgage, and not a technical payment and extinguishment thereof.

There was no testimony tending to show that the transaction was intended as a technical payment of the Arms mortgage; and the charge that if the jury so found, their verdict should be for the plaintiff, was therefore erroneous. *Manwell Admrx* v. *Briggs,* 17 Vt. 176.

II. The court erred in their charge in relation to the note and mortgage given by Rublee to Langdon. When a note, secured by mortgage, has been partly paid and is given up and a new note is taken for the balance due upon it, the mortgage security is not thereby released as against the mortgagor or subsequent motgagees in the absence of any agreement or understanding that the transaction should have that effect. *McDonald* v. *McDonald et al.,* 16 Vt. 630. There must have been an express agreement in order to have it so operate, as in this case it was virtually taking the note of a third person for the debt of the plaintiff or his grantors. *Peter* v. *Beverly,* 10 Peters 532, 67; *Torry* v. *Baxter,* 13 Vt. 452.

Where a creditor takes a new security of an unequal or inferior degree, it is not an extinguishment of the original debt. *Jackson* v. *Shaffer,* 11 Johns. 513; *Day et al.* v. *Leals,* 14 Johns. 404.

There being no evidence tending to show that L. Rublee's note was taken in payment and satisfaction of the Arms mortgage, the charge that, if the jury so found, it would discharge Langdon's claim under the Arms mortgage, was erroneous. *Manwell Admrx* v. *Briggs*, 17 Vt. 176.

*Merrill & Willard*, for the plaintiff.

I. The writing from Judge Reed and the quit-claim deed are both consistent with the payment and extinguishment of the mortgage, and have as great tendency to prove a payment as a purchase. All the evidence on that subject was therefore properly left to the jury for them to say whether the defendants had established their right to hold under the old Arms mortgage; and the burden was upon them to show that affirmatively.

The law never raises such a presumption as is contended for by the defendants. In the absence of all other proof throwing any light upon the contract, such a presumption might be made; and the presumption must then be that the contract was made at the date of the quit-claim deed. But, as appears from this case, the first step in such a presumption would be a false one, for the quit-claim deed was not given until four years after this contract of purchase was made.

The court will never presume a fact that must be *proved*, when the evidence of that fact rests in *parol*. When it does make such a presumption, it usurps the province of the jury, and passes upon the weight of testimony and its credibility.

II. The charge of the court was fully in accordance with all well considered cases upon this subject. *Bullard* v. *Leach*, 27 Vt. 491; *Given* v. *Mann*, 27 Maine 212.

It was in accordance with that well settled principle that all contracts shall be construed according to the *intent* of the parties, and the language used in making contracts is only of service in ascertaining that *intent*. The courts do this always in construing *written contracts*, and direct juries to be governed by the same rule in finding contracts resting in parol. *Gray* v. *Clark*, 11 Vt. 583; *Lowry* v. *Adams*, 22 Vt. 160; *Wason* v. *Rowe*, 16 Vt. 525.

The opinion of the court was delivered by

Isham, J. It is admitted that the plaintiffs are entitled to recover in this case unless the defendants have shown a legal title to the premises in question, under what is termed the Arms mortgage. To that single question, therefore, our inquiry is confined. It appears from the case, that on the 17th of May, 1831, Jonathan Arms conveyed to Luman and Norman Rublee and Otis Standish a lot of land, of which the premises mentioned in the declaration are parcel, and that he took from them a mortgage deed of the same premises to secure the payment of the notes therein described. The defendants, in order to prove their title to the premises, gave in evidence a deed from L. and N. Rublee to Moses Hale, dated September 22, 1835, conveying a portion of the premises included in the Arms mortgage, and which is now owned by Mr. Langdon. They also gave in evidence the original mortgage deed given by the Rublees and Standish to Jonathan Arms and the notes therein mentioned, together with a quit-claim deed from Jonathan Miller as administrator of Jonathan Arms to Mr. Langdon, conveying all the premises described in that mortgage deed, and which included the premises claimed by the plaintiffs. The consideration of that quit-claim deed was the payment by Mr. Langdon of the balance due on that Arms mortgage, which he paid for the purpose of protecting from that mortgage, that portion of the premises which had been conveyed to him by Mr. Hale. By that payment and quit-claim deed, Mr. Langdon obtained the same interest and title to the premises mentioned in that mortgage deed, which Mr. Arms had in his life time, or which his administrator had after his decease. That Mr. Arms in his life time, and that Mr. Miller, as his administrator, had the legal title in those premises is clearly settled by the authorities. In the cases of *Atkinson* v. *Burt,* 1 Aik. 329, and *Lyman* v. *Mower,* 6 Vt. 345, it was held, that the mortgagee, after condition broken, had the legal title and the right of possession to the mortgaged premises, and could sustain ejectment against the motgagor and his grantees without even a notice to quit. The Comp. Stat. 344, sec. 29, provides that " a debt secured by mortgage and the mortgaged premises, belonging to the estate of any deceased person as mortgagee, or assignee of the mortgagee, when such mortgage shall not have been foreclosed in the

life time of the deceased, shall be considered as personal estate in the hands of the executor or administrator, and shall be administered and accounted for as such ; and the executor or administrator may cause the mortgage to be foreclosed, and may recover possession of the mortgaged premises in the same manner as the mortgagee or his assignee might have done in his life time." Under the provisions of this statute, on the decease of Jonathan Arms, the legal title and interest in these mortgaged premises passed to Mr. Miller as his administrator, the same as personal property belonging to that estate ; and is to the same extent under his personal control and disposition. He was authorized, without a licence granted by the probate court for that purpose, to discharge, release and transfer the legal interest in the mortgaged premises under the power given to him by his letter of administration. This point was determined in the case of Pierce v. Brown, 24 Vt. 172. It is immaterial for that purpose, whether the transfer of the mortgaged premises was made by an assignment on the back of the mortgage deed, or on a separate instrument, or by a quit-claim deed. In either case, the assignee or grantee obtains the legal title to the premises, to the same extent that it was held by the mortgagee in his life time, or by his executor or administrator, after his decease. The payment of that mortgage debt, therefore, and the quit-claim deed of Miller as the administrator of Arms, gave to Mr. Langdon a legal title to the premises described in the mortgage deed ; and, if it is unaffected by other testimony in the case, will in equity and at law prevail against the plaintiff's title.

The important inquiry in the case, therefore, arises whether there was any evidence in the case tending to defeat that legal title of Mr. Langdon. The court instructed the jury, that the question for them to decide on the evidence was, whether, when the money was paid on the Arms mortgage by Mr. Langdon, he intended to become the purchaser of that mortgage, or whether it was understood as a payment or extinguishment of it, and with no intent to keep the same on foot as a subsisting incumbrance on the the premises ; that if a purchase was not intended, but a discharge and satisfaction of it was the object of that payment, that the defendants under that quit claim deed had no legal title to the premises, and that the plaintiffs were entitled to recover. We

have no occasion in this case to inquire whether it was optional with Mr. Langdon to treat that payment as a satisfaction of the mortgage, or as a purchase of the premises, as he might find it for his interest afterwards to determine; nor are we called upon to decide whether the legal effect of that quit-claim deed can be affected and destroyed by evidence showing the intention of the parties in making that payment; as we are satisfied that there was no evidence in the case, tending to prove that a discharge or satisfaction of the mortgage was intended, and that that question was, therefore, improperly submitted to the jury. The fact does appear in the case that, on the first day of April, 1841, when the last payment on the Arms mortgage became due, Rublee was unable to pay it, and so informed Mr. Langdon, and that Mr. Langdon, for the purpose of protecting his part of that property from that mortgage, paid to Mr. Reed, in whose hands the mortgage deed and notes had been deposited, the balance due upon it. It also appears in the case, that Mr. Langdon, at the time he paid the money, took from Mr. Reed a letter to Miller, the administrator of Mr. Arms, requesting him to quit-claim to Mr. Langdon, not simply the premises owned by him, but all the premises included in that mortgage deed. If the intention of Mr. Langdon in the payment of that money had been simply to obtain a release of his property from that mortgage, he had only to pay the money and cancel the mortgage deed and notes. That would have protected his property, and he could equally have sought his remedy on the covenants of his deed for the money which he had paid. The fact that directions were given, at the time the money was paid, to execute the quit-claim deed, is a controlling circumstance, that it was the intention of Mr. Langdon to obtain, and of Mr. Reed and Miller to give to him the legal title of the entire mortgaged premises. The circumstance that there was not at that time any transfer of the notes, or assignment of the mortgage, and that the quit-claim deed was not executed until some time afterwards, has no tendency to defeat the legal effect of that deed as a transfer of the mortgaged premises, nor to show that an extinguishment or satisfaction of the mortgage was intended; for if the notes were not then transferred, or the mortgage deed assigned, nor the quit-claim deed executed, Mr. Langdon did take a writing from Mr.

Reed for that purpose; and during that period he had a claim upon them for the execution of the deed, and a transfer to him of the mortgaged premises, which in equity he could have enforced. The fact also, that Mr. Langdon has delayed to prosecute that mortgage for this length of time, has no tendency to show that a satisfaction of the mortgage debt was intended by that payment. It does appear from the case, that after the payment of the money on the Arms mortgage, Mr. Langdon called upon the other owners and occupants of these premises to repay the money he had advanced, and at all times has asserted his rights to the possession of the premises. It is difficult to conceive a case more free from any circumstance showing the mere intention to discharge a mort- gage, or where the right of an assignee of a mortgage is more fully and unequivocally established. The question of intention to extinguish the mortgage by that payment should not have been submitted to the jury on those circumstances, as none of them afford any evidence of such payment. · Upon the case as made, the court should have held, as a matter of law, that the payment of the money and the execution of the quit-claim deed was a transfer to Mr. Langdon of the legal title to all the premises in that mortgage deed. Upon those facts the question was one of law, and should not have been submitted to the jury.

The testimony introduced by the plaintiff in relation to the note and mortgage given by Rublee to Langdon on the 5th of February, 1842, for the money paid by him to Mr. Reed on the Arms mortgage was important in the case; and the question was properly submitted to the jury, whether the notes were given in payment for the money he had so advanced. If the notes were given and received for that purpose, it would, *prima facie* at least, operate as payment of that debt, and defeat the legal title of Mr. Langdon to those premises under the Arms mortgage. Though the conveyance by Miller, as administrator of Arms, to Langdon conveyed the legal title of those premises, yet he had but the title of the mortgagee, and that title was subject to be defeated whenever he was repaid by Rublee, the mortgagor, or by any other person having an interest in the premises, the amount due on that mortgage debt. The doctrine is well settled in this state that a promissory note given on a debt which accrued at the time the note was given, or

on a previous indebtedness, is presumptive evidence of the payment of that debt, so that no action can be sustained upon the original indebtedness   *Hutchinson* v. *Olcutt*, 4 Vt. 549 ; *Farr* v. *Stevens*, 26 Vt. 303.   The rule would be otherwise, if the note was received as collateral security, or under any fraudulent statements as to the solvency of the maker, or if it is rendered unavailable by some inherent vice, as illegality of consideration.   In such cases, the presumptive evidence of payment is rebutted, and the party has his remedy on the original indebtedness, the same as if the note had not been given.   The court in substance so instructed the jury.   The difficulty in this case arises from the fact that it is impossible to determine upon which of these questions the verdict for the plaintiff was rendered by the jury.   It may have been rendered exclusively upon the question improperly submitted to their consideration ; if so, it cannot be sustained.   On the other hand, it may have been rendered on the testimony in connection with the execution of the Rublee notes and mortgage given to Mr. Langdon ; in which case, the finding of the jury would be conclusive.   The fact that it does not appear from the case upon which of these grounds the verdict was rendered renders it necessary that the case be remanded for another trial. Judgment reversed and case remanded.