EDGAR B. TAYLOR, AS ADMINISTRATOR, ETC., OF JAMES COLLINGWOOD, DECEASED, RESPONDENT, *v.* EDWARD POST AND MARIE A. POST, APPELLANTS, IMPLEADED WITH OTHERS.

*Mortgage given to a firm to secure advances — a successor to the firm is not entitled to the benefit of it — a verbal agreement that it shall have the benefit of it is void — when payments to the new firm will not discharge debts due to the old one — when a reconveyances to a husband of property which has been theretofore conveyed by a husband and wife by way of mortgage, will restore the wife's right of dower as against a mortgage given back by the husband to the grantor.*

The firm of Collingwood, Mellard & Co., had business relations with one Post, and sold goods to him on credit. Post and his wife executed and delivered a deed of certain real estate to Collingwood, to be held by him as a mortgage for the benefit of his firm, to secure any amount that might be or become due to it from Post. Subsequently Collingwood reconveyed the premises to Post, who gave back to him a bond and mortgage for $4,000, to secure his existing and future indebtedness to the said firm. His wife did not join in this mortgage. Subsequently Collingwood died. Thereafter the surviving partner Mellard, and one Taylor as trustee of Collingwood, continued the business of the old firm under the old name, subsequently taking in new partners, viz.: Taylor individually, one Ackerly and one Brooks. The new firm used the books of the old one and continued the accounts therein, without settling or in any way altering the same. It did not appear that the assets of the old firm were formally transferred to the new, or that the latter was appointed to act as the agent of the former. Post continued to deal with the new firm under the verbal agreement that the

mortgage should stand as a security for his new obligations. At the time of Collingwood's death he owed the old firm $5,529.30. He bought $8,518.14 worth of goods from the new firm and paid to it the sum of $7,846.20. It did not appear that any account had been rendered to him, showing the application made by the new firm of these payments.

An action having been brought by Taylor as administrator of Collingwood, to foreclose the mortgage:

*Held*, that the new firm was not a continuation of, or the successo to the old firm in such a sense as to entitle it to the benefit of the mortgage given to the old firm.

That the verbal agreement to extend the obligation of the mortgage, so as to include the debts incurred to the new firm, was invalid and of no effect.

That the payments made to the new firm did not operate to discharge the debts due to the old firm and should not be applied thereon.

That the mortgage was a valid security for the debts due to the old firm at the time of Collingwood's death, to an amount not exceeding the face of the mortgage, $4,000, with interest thereon.

That the reconveyance of the land from Collingwood to Post, and the acceptance of the mortgage released and restored to Post's wife, her inchoate right of dower in the land, and that her right thereto was not affected by or subject to the said mortgage given to Collingwood at the time of his conveyance to Post.

The mortgage given by Post to Collingwood recited that it was a purchase-money mortgage.

*Held*, that as it appeared that it was not in fact a purchase-money mortgage, the wife's right to dower was not affected by such recital.

APPEAL from a judgment of foreclosure and sale, entered upon the trial of this action by the court without a jury. The action was brought to foreclose what purported to be a purchase-money mortgage given by the defendant Edward Post (but not signed by Maria A. Post his wife). At the time the mortgage was given the premises described therein were conveyed to Edward Post—they having been previously conveyed by Post and wife by an absolute deed to be held, however, as a mortgage by the party subsequently conveying them to Post.

*Guy C. H. Corliss*, for the appellants.

*Thompson, Weeks & Lown*, for the respondent.

PRATT, J. :

The essential facts of this case are these: Collingwood, Mellard & Co., were dealing with Post and extending credit to him. In order to secure the firm Post and his wife delivered a deed to Collingwood covering the premises in question, which was intended as

a mortgage for the benefit of Collingwood's firm. Afterwards Collingwood reconveyed the premises to Post, who gave back to Collingwood as trustee a bond and mortgage for $4,000 to secure his existing and future indebtedness to the firm. The case contains no evidence, only findings. Collingwood died while holding this bond and mortgage. The action is to foreclose that mortgage and is brought by Taylor, as Collingwood's administrator, but it is conceded he has the right to maintain the action if the mortgage is in fact a lien. The surviving partner Mellard, and Taylor, as trustee of Collingwood, seem to have continued the business of the old firm under the old firm name, and to have taken in new partners. They continued the account upon the books without drawing any distinction between the transactions before and after Collingwood's death, and appear to have ignored their duties to Collingwood's heirs and representatives and the creditors of the old firm. I take it to be clear that the surviving partner did not deal *as a surviving partner*, but individually, because the findings clearly indicate that a *new firm* was formed after Collingwood's death. True, the new firm was composed of Mellard, the survivor, and the trustee of Collingwood's estate, together with one Ackerly, but it is clear that it was nevertheless a *new firm*. After that other new members were admitted into this new firm, viz., Taylor, individually, and one Brooks. Then this new firm continued to deal with Post on credit, and they undertook to make an agreement that this mortgage should stand as security for his indebtedness to the new firm. The findings treat these changes in the new firm as constituting new and successive copartnerships.

The findings indicate that Post continued to deal with the new firm, under the understanding that the old mortgage should stand as a security for his new obligations. After Collingwood's death, Post bought $8,518.14 worth of goods from the new firm and made payments which were entered to his credit generally upon the said books amounting to $7,846.20, and the questions may be therefore stated as follows: 1st. Was the arrangement to extend this old mortgage so as to cover the new indebtedness, a valid agreement giving a lien for the new dealings. 2d. Ought the $7,846.20 of payments made by Post to the new firms to be applied upon the $8,518.14 of his purchases from the new firms or upon the $5,529.30

which was due to the old firm at Collingwood's death. 3d. Did Collingwood's reconveyance to Post release Mrs. Post's right of dower so that it is not covered by this mortgage.

First, then, as to the parol agreement to extend the mortgage so as to cover credits given by the new firm to Post. It seems that this firm, relying upon the good faith of Post and the supposed validity of such agreement, continued to sell goods to him upon credit and to receive payment upon account.

Upon one side this contract has been executed by the delivery of the goods and giving of credit, and a repudiation of it by the defendants operates as a fraud upon the rights of his creditors. Yet it is an agreement which the law prohibits and cannot therefore be enforced. It must be accepted as settled, that a mere verbal agreement to extend a mortgage to cover new advances and obligations not within the original agreement is invalid. (*Stoddard* v. *Hart*, 23 N. Y., 556; *Hubbell* v. *Blakeslee*, 8 Hun, 603; *Bank of Utica* v. *Finch*, 3 Barb. Ch. R., 293.)

This mortgage was originally given to secure existing and future indebtednesses of Post to the firm of Collingwood, Mellard & Co. It was valid for that purpose only, and it could not by parol be made to cover or stand as security for any new indebtedness of Post to the new firms. (*Townsend* v. *Empire Stone Dressing Co.*, 6 Duer, 208 to 219.)

The second question is the one of the most difficulty and importance in the case. I conclude that the transactions between Post and the new firms were wholly independent of those with the old firm. In the first place it is apparent from the papers that the surviving partner and Collingwood's trustee did not discharge their duties either to Collingwood's estate or to the creditors of the old firm. Collingwood died intestate. Hence, there was no authority to continue the joint property of the old firm subject to the risks of general trade.

There is no evidence that any such power was desirable from the copartnership agreement. That instrument is not before us, and I can presume nothing of its terms. Hence, it was the plain duty of the surviving partner immediately upon Collingwood's death to wind up the affairs, and to keep its assets separate and distinct from any general new business. So, too, Taylor was guilty of legal

wrong in carrying over the old assets into the new firm. He would have been liable to Collingwood's heirs and individual creditors for any loss or misadventure of the new business. So, too, he did a wrong in entering into the new firm as a trustee. Any heir or creditor of Collingwood might have secured the appointment of a receiver of his *share* of the copartnership assets of the old firm and compelled both Taylor and Mellard to render an account for their conduct. So, too, could any creditor of the old firm have obtained similar relief. The continued use of the copartnership assets in any such way would have been enjoined irrespective of the question of the solvency or insolvency of the wrong doers. The new mass of property, composed as it was in fact of the old and trust property mingled with their new and individual purchases, would have been liable to distribution under the statute and thus have prevented restitution, etc. (*See Hooley* v. *Gieve*, 9 Abb. N. C., 8.) It is in view of this state of affairs that the defendant claims that the account of the old and new firms was one continuous account. In one sense it was, but it could not have been in any legal sense. It was continuous only in the sense that the entries in the books relating to the new transactions have been written in the same books as if in continuation of the old account. It was a continuous account only on paper. It lacked every element of a continuous account in the eye of the law. It was between different parties. Suppose that Post had made no payments and the new firm had sued Post for the entire sum, *i. e.*, the $5,529.30 due the old firm at Collingwood's death, and the $8,518.14 to the new firm, we should then have had an action by Mellard, Taylor as administrator, Taylor individually, and Brooks, alleging that they as copartners owned the entire debt.

It is plain upon the facts stated in the findings no such action could have been maintained. Nor did Mellard either as survivor or individually, so far as it appears, ever transfer any interest in the old firm for the new firms.

But again the findings do not show that the payments, viz.: $7,846.20, were made to Mellard as survivor. They were made to the new firms, *i. e.*, Mellard acting *individually* and not as survivor at all; Taylor individually; Taylor as administrator, when he had no right to act in either capacity as affecting the old debt, and

Brooks individually, who never had any interest in the old debt. It is plain that these parties to the old debt never intended to receive these payments in any such capacity as would discharge the old debt. Even if they had done so, it is more than doubtful if it would have been a good payment to discharge the old debt. Under those circumstances it is impossible to say that the law would raise a presumption that any of the payments should be applied on the old debt. Post must have known of Collingwood's death, and was therefore bound to know the reciprocal rights and duties of these parties quite as well as any of them.

But the findings seem to settle the point about these payments. They state that the payments were made to the new firms, and no right is shown the new firms, or either of them, whether as owners by assignment or as agents or otherwise, to receive a payment of the old debt. If they had no right to receive such payment, how can it be said that any act of theirs could discharge the debt. But it was the intent of all parties at all times that this mortgage should be a valuable and available asset held in trust for the firm.

I cannot see that this bare fact that the new firms used the old books and continued the account therein, can have the effect claimed by the defendants. It does not appear even that any account stated was ever given to Post, wherein the credits were made to discharge the old indebtedness. All that the members of the new firms did was to credit the payments made by Post, in the account kept in their books. The sales made by the new firms constituted an entirely new and separate indebtedness, and the credits were made in the same account.

Here, then, were two distinct matters between different and distinct parties, one a debt due the survivor of the old firm, and a current account with the new firm. All the embarrassment in this case arises out of the facts that the new firms used the same name as the old and took the property and books and continued in the same business as the old firm, and from the further facts that Mellard and Taylor became members of the new firm. If the books and property of the old firm had been sold to a person who had carried on the business, trusted and received payments from Post and kept his accounts in the old books, it could not for a moment

be claimed that any such payment could be applied to extinguish the old debt. Yet, in contemplation of law, the transactions here are of precisely similar import. The rule undoubtedly is in case of an open current account, the items of which do not form distinct debts but are blended together in one account, that in the absense of any application by the debtor or by special agreement, the payments shall be applied as they are made to the charges in the order of time in which they accure.

The defendants claim that this rule " will apply to accounts with a partnership, of which there is some change in the members, provided the account goes on as one continuous open and current account." This is true in some cases, to wit, where a person purchases an interest of a partner in a firm and takes his place therein and continues the account without interruption. (*Coleman* v. *Lansing*, 65 Barb.; 55.)

But I can find no case in this State holding the doctrine as applicable to a case where a partnership has been dissolved by the death of one of the partners, and an entirely new firm has been formed. The leading case upon this precise point is *Pemberton* v. *Oakes* (4 Russell's Rep., 154), decided by Chancellor LYNDHURST, in 1827. A reference to that case will show that it must be distinguished from the present case. Harding, Oakes and Wellington carried on business under articles of copartnership, wherein, among other things, it was agreed that if Harding should die before the expiration of the copartnership term he should have the power by will to dispose of his interest in the firm, and the persons to whom it should be given should in effect enter the partnership and carry on the business. Harding died before the expiration of the copartnership term, leaving a will providing for such an arrangement, and the parties to whom the interest was given entered the firm and continued the business. It will readily be perceived that this was a case of a new member taking the whole interest of a retiring member without substantial change, and subject to all the burthens and relations incident to that interest.

In the present case no one purchased or took by gift or otherwise, the interest of Collingwood in the old firm; nobody but Mellard in the new firm could receive money upon the old account, and he could only do so as surviving partner, and he did not receive any

payment, for the findings show that all the payments were made to the new firms.

If the case of *Pemberton* v. *Oakes* is invoked except to apply the principle to a case of change of members by a new member succeeding to the interest of a retiring member in a continuous copartnership, its authority may well be doubted.

The chancellor seemed to rely for authority upon *Clayton's case* (1 Mer., 585) and *Bodenham* v. *Purchas* (2 B. & Ald., 39). Neither of these cases establish any such principle. In Clayton's case the transactions were with the surviving partners.

The other case was decided upon another point not material here to be noticed. In regard to the case of *Pemberton* v. *Oakes*, Collyer in his note on Partnership (Perkins edition of 1848, § 635) says : "It may be doubted upon a perusal of the case of *Pemberton* v. *Oakes* whether the observations of those counsel, who argued against the reduction of the debt in the manner above stated, were satisfactorily answered by the learned judge, and in the recent case of *Jones* v. *Maund* (3 You. & Coll., 347, in which however the case of *Pemberton* v. *Oakes* was not brought to the attention of the court) Lord ABINGER, C. B., made a decision which is at variance with that of Lord LYNDHURST."

It cannot therefore be regarded as a binding authority at the present time in England. But even admitting it was correctly decided, it is not decisive of the present case for the reasons already stated. We do not think the fact of the new firm keeping their accounts in the old books is controlling, inasmuch as it does not appear that any balance was ever struck or account stated therein ; especially in view of the fact that both parties intended that the mortgage should continue as a valid security to pay past indebtedness. The numerous authorities cited by the appellant upon the doctrines applicable to payments we do not regard as in point upon the question at issue. If these views are correct it follows that the mortgage is still a valid security for the payment of the indebtedness due the old firm at the time of the death of Collingwood.

We also think Marie A. Post is entitled to an inchoate right of dower in the entire fee of the mortgaged premises.

It is true she signed the original deed and released her dower to Collingwood, but the findings show that the deed was given as

security and was intended as a mortgage and in fact was a mortgage, except in form. The legal estate therefore remained in Post, subject to her right of dower notwithstanding the form of the instrument. (*Odell* v. *Montross*, 68 N. Y., 503; *Horn* v. *Keteltas*, 46 id., 605; *Carr* v. *Carr*, 52 id., 258; *Murray* v. *Walker*, 31 id., 399.) Collingwood then must be regarded merely as a mortgagee, and when he gave a deed to Post it was not a conveyance of the legal estate, for he did not own that, but it was a method for exchanging the mortgage he then had, for one that the wife had not signed. It was nothing less than a satisfaction of it to perfect the arrangement of exchange. It being in the form of a deed, it was necessary that the satisfaction should be in like form to make the record in the registry complete.

As soon as this arrangement was perfected the deed or first mortgage was canceled or superseded by the mortgage in suit which she did not sign, and her inchoate right of dower was restored to her free and clear of any incumbrance. (*Elmendorf* v. *Lockwood*, 57 N. Y., 325; *Hammond* v. *Pennock*, 61 id., 145; *Malloney* v. *Horan*, 49 id., 111.) Reference is made to numerous cases to show that in other states the rule is that a deed from the holder of an equitable mortgage to the owner of the fee operates as a satisfaction of the mortgage. (*Hunt* v. *Hunt*, 14 Pick., 374; *Cole* v. *Edgerly*, 48 Me., 112; *Collamer* v. *Langdon*, 29 Vt., 32.) Also, that in this State such a transaction operates as an assignment of the mortgage interests in the premises or as a cancellation by the mortgagee. (*Miner* v. *Beekman*, 50 N. Y., 344; *Winslow* v. *Clark*, 47 id., 261; *Bostwick* v. *Frankfield*, 74 id., 214; *Millard* v. *McMullin*, 5 Hun, 572.) But it is unnecessary to discuss whether the deed-mortgage was assigned, satisfied or merged. So far as Mrs. Post's rights are concerned it was canceled. It no longer stands in the way of her claim to dower in the whole fee. The plaintiff, moreover, claims that the mortgage in suit purports to be a "purchase-money mortgage," and, therefore, she having signed the first deed, dower cannot be claimed. The answer to this consists in the fact that it was not a purchase-money mortgage. It was properly shown upon the trial, and found as a matter of fact, that it was given to secure past and future indebtedness, precisely the same as the previous deed-mortgage had been given, for which it was given in

exchange. Again, it was not the premises or fee of the land that Collingwood was selling to Post, for Post already had that, and Mrs. Post held her dower in it subject to the deed-mortgage, but he was canceling his mortgage and taking a new one in stead. There was nothing therefore in the transaction upon which the words "purchase-money" in the new mortgage could have any legal bearing or effect. The conclusion seems irresistible from reason as well as authority, that Mrs. Post is entitled to an inchoate right of dower in the whole premises. We are also of the opinion that the claim of the plaintiff must be confined to the amount stated in the mortgage trust, $4,000 and interest. The decree may be amended accordingly, and judgment of affirmance entered thereon, without costs to either party in this court.

Present — BARNARD, P. J., DYKMAN and PRATT, JJ.

Judgment modified in accordance with opinion of Justice PRATT.