# McMillan & Son *v.* Jewett.

*Bill in Equity to have Absolute Conveyance declared Mortgage, and for Account and Redemption.*

1. *Absolute conveyance declared mortgage, when.*—A conveyance absolute in form, which recites as its consideration the payment in hand of $2,000, the further sum of $3,000 to be paid, "and such further sums of money and lumber as may be delivered" to the grantor by the grantee, will be declared a mortgage in a court of equity, on proof that the relation of creditor and debtor existed between the parties at the time, and that the former had agreed to continue making future advances.

2. *Release of equity of redemption.*—While the mortgagor can not, by a contemporaneous agreement, expressed in the mortgage or otherwise, waive or release his equity of redemption; a subsequent release will be sustained, if supported by a sufficient consideration, in the absence of fraud, oppression, and undue advantage; and though the release or transfer of the equity of redemption, under a formal mortgage, must be in writing, and contain words of grant or transfer, no

[McMillan & Son v. Jewett.]

writing is necessary, when the original conveyance is in form an absolute deed, the right of redemption being created by parol agreement.

3. *Same; case at bar.*—In this case, the original conveyance, in form an absolute deed, construed in connection with the evidence showing the relation between the parties and their dealings with each other, was declared a mortgage: but, by the subsequent negotiations between them on a statement of accounts, the conveyance being re-acknowledged as of the latter date, the mortgagor accepting leases of the property at an annual rent, and of other property belonging to the mortgagee, with the privilege of renewal for a term of years, and the right to purchase any part of the property, at any time during the term, at a stipulated price, the equity of redemption was released and extinguished, and nothing left to the mortgagee but the right to repurchase on the terms specified.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. THOS. W. COLEMAN.

The bill in this case was filed on the 13th May, 1887, by John F. Jewett, against McMillan & Son, as partners and individually; and sought to have a conveyance, executed by complainant to defendants, declared a mortgage, and for an account and redemption. The conveyance, a copy of which was made an exhibit to the bill, was dated December 1st, 1877, and in these words: "Know all men, that I, John F. Jewett, of the city and county of Mobile, for and in consideration of the sum of $2,000 to me in hand paid, and for the further sum of $3,000 to be paid, and for such further sums of money and lumber as may be delivered to me by M. M. McMillan & Son, of Stockton, Baldwin county, Ala., have released, remised, and forever quit-claimed, and by these presents do release," &c., "unto the said M. M. McMillan & Son, to them, their heirs and assigns, all the estate, right, title, interest, property, claim and demand whatsoever, at law as well as in equity, in possession as well as in expectancy, all the interest I possess in the Creek mill property," describing it, "together with all the machinery contained in the mill thereon situated; also, all my right of redemption in the lot of land in the city of Mobile, at the north-east corner of Madison and Water streets, . . together with all the machinery and improvements now or to be erected thereon by [ ? ] while in possession as a tenant of said McMillan & Son; also, all my right of redemption in certain lands in Baldwin county, known as the Robert C. Barlow tract, . . ; to have and to hold the same unto them, their heirs and assigns, forever. In witness whereof," &c.

The bill sought to redeem only the "Water street lot,"

[McMillan & Son v. Jewett.]

and prayed that, on the statement of the accounts, the defendants might be charged with the rents thereof, or the value of the use and occupation, and with "the proceeds realized by them from the Creek mill lot, and with $1,000 fixed as the price of the Barlow tract." The various transactions between the parties, both prior and subsequent to the execution of this deed, are stated in the opinion of the court, and it is not necessary to repeat them. On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant, declaring the conveyance to be a mortgage, and ordering a statement of the accounts by the register. The defendants appeal from this decree, and here assign it as error.

PILLANS, TORREY & HANAW, for appellants.

AUSTILL & ERWIN, *contra*, cited *Webb & Mullins*, 78 Ala. 111; *Welch & Phillips*, 54 Ala. 309; 2 Washburn on Real Property, 152; *Oudell v. Montross*, 68 N. Y. 499.

CLOPTON, J.—Appellee seeks by the bill to have a deed, absolute in form, declared a mortgage, and be let in to redeem one of the parcels of the real estate therein described, known as the "Water street lot." The deed expresses on its face a consideration of two thousand dollars paid, three thousand to be paid, and such further sums of money and lumber as might be delivered to the grantor by the grantees; and conveys the tract known as the "Creek mill property", and his right of redemption in the "Water street lot", and the "Barlow Tract." The deed was executed under the following circumstances: On May 24, 1876, complainant borrowed of defendants their four promissory notes, payable respectively nine, twelve, fifteen and eighteen months after date, and to indemnify them against loss on account of the notes, executed two mortgages, one on the "Water street lot" and the other on the "Creek mill property." Defendants having paid the notes which had matured, and being liable to pay the others, and also having agreed to pay a first mortgage on a part of the property, and complainant desiring future advances of money and lumber, the deed in question was executed December 1, 1877. It had its origin in a loan of notes and an advance of money, was made before all the notes had matured, and contemplated a future advance of money and lumber. The relation of

[McMillan & Son v. Jewett ]

debtor and creditor existed at the time of the execution of the deed, and it must be regarded as intended, when originally made, as a security for an existing and continuing indebtedness. Had there been no subsequent transactions between the parties, modifying or altering the character and effect of the deed, there could be no question of the right of complainant to be let in to redeem.

Though it is a settled doctrine, from which it has been said a court of equity never deviates, that the debtor has, so long as the conveyance is intended for security, the equity of redemption, which can not be waived or released by a contemporaneous agreement, expressed in the mortgage or otherwise; it is equally well settled, that the mortgagor may, by subsequent agreement, release and transfer the equity of redemption to the mortgagee. Such release will be maintained in equity, if supported by a sufficient consideration, and there is an absence of fraud, oppression, and undue advantage.—*Stoutz v. Rouse*, 84 Ala. 309; *Pugh v. Davis*, 96 U. S. 332.

After the execution of the deed, some negotiations were had between the parties, with a view to the erection of a mill on the "Water street lot." On August 9, 1880, defendants sent complainant a full statement of his account and indebtedness, accompanied by a proposition, that the books should be balanced to date, and future agreements should be in writing, with an assurance that, if no unseen accident prevented, they would be able to furnish the money to build the mill, under a written agreement that complainant should own the property when clear of debt. After full opportunity to examine the accounts, complainant went to defendants' place of business, and, instead of the agreement suggested, a settlement was made, August 11, 1880, by which the books were balanced, by entering on the account a credit of the agreed valuations of the three parcels of real estate conveyed by the deed, and an instrument was signed by both parties, substantially stating that all unsettled accounts to date were closed by transfer of real estate. The credits were entered in the handwriting of complainant, and the instrument was written by him. As parts of the same transaction and settlement, defendants executed to complainant three separate leases—one to the "Water street lot," one to the "Creek Mill property", and the other to a brick store in the city of Mobile. Each lease contains similar provisions. They provide that the lease is for one year, with the privilege of re-

newal from year to year, for the term of ten years, upon the same terms, and confer the privilege of purchasing the property, at any time during the continuance of the lease, at a specified price, the amount to be paid being different as to each piece of property. The lease to the "Water street lot" contains the further provision, that complainant should have the privilege of erecting buildings and new machinery thereon, with the right of removal at the termination of the lease, unless defendants purchased such buildings and machinery at a valuation to be determined by arbitration. Under this lease, complainant occupied the premises until about 1882, when he surrendered possession, because defendants declined to reduce the rent, and it was thereafter rented to the "Danner Land and Lumber Company." The store in the city of Mobile was the property of defendants, and had never been owned by complainant. Notwithstanding this, the transaction as to each parcel of the property is substantially the same, as to the right to renew the lease, and to purchase the property, the only difference consisting in the price to be paid. No other deed to the property was executed, but, in lieu thereof, complainant re-acknowledged before the judge of probate the execution of the deed in question.

If the deed was intended to continue to operate as a mortgage, why was a separate lease to each piece of property made and accepted, reserving an independent and distinct right to purchase either piece? Why was the property conveyed thereby leased, in connection with the store, with the same rights and privileges of renewal and purchase? Why was the deed re-acknowledged and delivered to defendants, if it was not intended to give it effect which it did not previously possess? The evidence fails to show any fraud, undue influence, or oppression; and the weight of the evidence is, that the property was estimated at a fair value. The conclusion from the facts and circumstances is, that the settlement was a finality, by which the indebtedness of complainant to defendants was satisfied and extinguished by the transfer of the real estate, and that the deed was intended thereafter to be absolute in legal effect, as well as in form. By the transaction, and the terms and purport of the leases, the complainant acquired only the right of re-purchase. In *Murphy v. Barfield*, 27 Ala. 634, a bill of sale fixing the price of each of four slaves, which contained a provision that the vendor "may redeem any or all the forementioned ne-

[Nashville, Chattanooga and St. Louis R. R. Co. v. Hembree.]

groes, at the valuation herein before affixed to them, within the time of twelve months after this date," was held to be a conditional sale.

It is further insisted, that the equity of redemption, being an interest in land, can not be released or transferred, except by an instrument in writing containing words of grant or transfer. This is unquestionably the rule, when the conveyance, either by expressed terms or necessary effect, reserves to the mortgagor an equity of redemption. In such case, there may exist facts which will operate in equity to estop the mortgagor from asserting an interest in the property. The present deed, however, is absolute in form, and neither expressly nor impliedly reserves any interest in the grantor. His right of redemption was created by parol agreement, when the deed was first made. A parol agreement concerning land may be discharged by parol, and such discharge will constitute a valid defense to a bill to redeem.

The decree is reversed, and a decree will be here rendered dismissing the bill.