# Staunton.

## CUPP v. LESTER.

### September 14, 1905.

1. VENDOR AND PURCHASER—*Right to Redeem—Terms of Redemption—Case in Judgment.*—Under the terms of the agreement in suit allowing the former owner of land to redeem upon reimbursing the purchaser for principal, interest and costs expended by him in buying the land at a judicial sale thereof, it is not error to require such former owner, as a condition precedent to his right to redeem, to pay not only the amount expended as aforesaid, but also the balance owing by the former owner to such purchaser on a deed of trust given on a part of the land to secure a loan made by the purchaser to such owner.

2. CONTRACTS—*Fraudulent Procurement—Benefits.*—Where a party is induced by the false representation of another to enter into an agreement involving the outlay of money on the faith of certain property as security therefor, and, in consequence of such representations, he is wholly deprived of the security furnished by a large part of the property, and thereby sustains a large pecuniary loss, the party making such representations will not be allowed to claim the benefit of a stipulation in the agreement which is favorable to him and detrimental to the other party.

Appeal from a decree of the Circuit Court of Montgomery county. Application by Lester for a writ of possession against Cupp. Decree in favor of Lester. Cupp appeals.

*Affirmed.*

The following statement, taken from brief of counsel for the appellee, sets forth the facts as nearly as they can be gathered from the record:

"A creditor's bill was pending against Anderson Cupp to enforce the liens against his lands. The lands had been rented by him from a receiver of the court, who held his bonds.

"He and his attorney applied to Lester for a loan of one thousand dollars, to be secured by a deed of trust on an 83½-acre tract of land, which they assured Lester would be the first lien thereon, and that the land was worth a good deal more than $1,000. Lester took their word for it and loaned the money without any other knowledge or information than Cupp and his attorney gave him; and took a trust deed dated July 23, 1896, on the said tract.

"About half of the $1,000 was applied to a debt to the Bank of Christiansburg, which was secured by the first lien on the 83½ acres, and an assignment of the debt was made to Lester, which eventually proved to be the only security he had. The residue was used to pay Cupp's rent to the court's receiver.

"Between the bank's trust-deed and Lester's deed there were nearly eleven hundred dollars of judgments, which bound all of Cupp's land, and a vendor's lien for over $800.00 on one of the most valuable tracts of his land. The intermediate liens, including vendor's lien, amounted to over $1,800.00, and the value of all the lands, as shown by the subsequent sales, was $2,017.00, from which came the costs of the suit and sales, and the Bank of Christiansburg's trust deed; the net result being that the proceeds of sale lacked $433.24 of reaching Lester's trust deed.

"The amount he received on the assignemnt from the bank of Christiansburg, to-wit, $392.50, was a credit on the debt secured by his trust deed, but left a balance due him, including interest to date of sale, March 17, 1900, of $758.54.

"In March, 1899, all of the lands were sold by a commissioner, and the sale, aggregating $1,026.75, was reported to the May term of the court.

"On the first day of the court Lester went to see Cupp, and looked at some of the lands. Cupp asked him to put in an upset bid, and on the next day, May 11, they entered into the agreement in question, which was drawn by Cupp's counsel.

"It recites that Lester agreed to put in an upset bid (amount not stated) for six parcels of Cupp's land, and to pay off the *liens reported* by Commissioner Farley, that were prior to Lester's deed of trust, excluding one named judgment, and that Cupp, in consideration thereof, agreed to give Lester one-half of the coal in one of the tracts, containing 100 acres.

"It then provides, 'in case Lester buys the lands to protect himself and Cupp can reimburse him for principal, interest and costs expended in buying said lands, then Cupp is to have said lands back, but this last clause shall in no wise affect either interest in the coal on the 100 acre tract, in all events this contract is to give Geo. E. Lester one-half interest in said coal, and retains the other half as Cupp's.'

.   .   .   .   .   .   .   .   .   .

"Lester at once put in an upset bid, advancing the price of all the land to $1,136.00; Cupp filed exceptions to the commissioner's report, and the land was resold, Lester buying five of the parcels, and J. C. Haynes, who had the vendor's lien for over $800.00, buying the tract, on which that lien rested, at $700.00. Exceptions were filed to the sale of three of the parcels purchased by Lester, and another sale was ordered and made, at which he again purchased them, and this sale was confirmed. The net result of all the sales was as hereinbefore stated.

"The Haynes vendor's lien was not *reported* by Commissioner Farley.

.   .   .   .   .   .   .   .   .   .

"After the sales to Lester were confirmed, he gave notice that he would ask for a writ of possession. Cupp defended that motion, set up the May 11th agreement, claimed that Lester had not complied with it, and that, until Lester paid the debts,

he was not entitled to possession, and prayed that the interests of himself and Lester in the coal be fixed and that a reasonable time be given him in which to reimburse Lester what Lester had paid or might be compelled to pay.

"The court awarded the writs of possession November, 1900, and, November, 1902, made a settlement between Cupp and Lester, found Cupp indebted on the trust deed debt, $758.52, which sum, with interest, it decreed against him, found that Lester had paid for the lands purchased by him, $1,287.50, and gave Cupp the right to redeem the lands, except one-half of the coal, by paying, within ninety (90) days, both of said sums; from this decree Cupp has appealed."

*Wm. Gordon Robertson* and *Moore & Harless,* for the appellant.

*Archer A. Phlegar* and *M. H. Tompkins,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

The object of the suit out of which this controversy arose was to subject the real estate of the appellant, Anderson Cupp, to sale to satisfy liens.

Pending the litigation, appellant, accompanied by his counsel, sought the appellee, George E. Lester, who was not a party to the suit, and procured of him a loan of $1,000, to secure which Cupp executed a deed of trust on a tract of 83½ acres of land, which was represented to Lester as affording ample security for the debt. Subsequently, when the cause had reached the stage where the lands had been sold and a confirmation of the sales was being pressed, Cupp again approached Lester, and, in consideration of his agreeing to prevent the confirmation of the sales of several parcels of the land by putting in upset bids, the folowing contract was entered into:

"That whereas, Geo. E. Lester agrees to put in an upset bid

on six tracts of land sold on 4th March, to-wit, 83-½ acres, 50 acres, 37 acres, 9 acres, 100 acres, one-half interest in 50-acre tract, and pay off the liens reported by Com'r. Farley, that are prior to the deed of George E. Lester's deed of trust . . .. Now, the said Cupp, in consideration of the premises, agrees to give to Geo. E. Lester a one-half interest in the coal on the one hundred-acre Miller tract; that is to say, that in consideration of this accommodation Lester is in any event to have one-half interest in that coal, and Cupp one-half interest.    In case Lester buys the lands to protect himself, and Cupp can reimburse him for principal, interest, and costs, expended in buying said lands, then Cupp is to have the said lands back, but this last clause shall in no wise affect either interest in the coal on said 100-acre tract, in all events this contract is to give Geo. E. Lester one-half interest in said coal, and retains the other half as Cupp's."

At re-sales of appellant's lands upon the upset bids appellee became the purchaser of the six tracts referred to at the aggregate price of $1,287.50.

The cause was heard upon a rule against appellant to show cause why a writ of possession should not be awarded requiring him to deliver to appellee the possession of the lands purchased by him, and upon the pleadings and evidence.    Whereupon the trial court passed the decree complained of, which ascertained the amount due from Cupp to Lester to be $2,046—$1,287.50, part thereof, representing the sum paid by Lester for the lands purchased by him at the re-sale, and $758.50, the residue thereof, being the unpaid balance due upon the $1,000 loan secured by deed of trust.    The decree also provided, that upon appellant paying to appellee said sums within 90 days from the adjournment of the court, the latter should convey to the former the lands in question with the exception of one-half interest in the coal on the Miller tract.    Alternatively, the decree provided, that upon the failure of appellant to pay the amounts decreed against him within the time prescribed, he should be forever barred from demanding or claiming any interest in said lands.

The first assignment of error involves the action of the court in requiring the appellant to pay to Lester the balance of $758.-50, due on the loan of $1,000.

With respect to that assignment, it appears that the bank of Christiansburg held a first lien on the 83½-acre tract, which Lester discharged out of the $1,000 loaned to Cupp, and took an assignment of the bank's lien. To the extent of that lien, therefore, by substitution to the right of the bank, Lester was reimbursed at the subsequent sale of that property; but the entire proceeds of sale of the residue of Cupp's lands were consumed in the liquidation of liens prior to Lester's deed of trust, so that the balance due thereon was never paid. Hence there was no error in the decree requiring Cupp to pay that balance as a condition precedent to his right to redeem the lands purchased by Lester.

The remaining assignment of error deserving notice relates to the ruling of the court denying appellant the benefit of the stipulation in the contract with respect to one-half the coal on the Miller tract.

In that connection it appears that there was a vendor's lien on the 37-acre tract of land mentioned in the agreement, amounting with interest to over $800, which was afterwards bought by the vendor for $700. That lien was not included in the report of Commissioner Farley, and was represented by appellant to have been satisfied. Appellee was thus induced by the false representation of appellant to enter into the agreement and wholly deprived of the security afforded by that property. Under the foregoing circumstances, the court was justified in denying appellant the benefit of the stipulation with regard to the one-half interest in the coal.

Upon the whole case, the decree is without error, and must be affirmed.

*Affirmed.*