# CHARLESTON.

## WEBB *v.* CROUCH *et al.*

Submitted September 8, 1911. Decided April 2, 1912.

1. MORTGAGES—*Absolute Deed—Conveyance by Mortgagee.*
   A mortgagee, though his mortgage be in form an absolute deed, may by like absolute deed sell and convey his mortgage rights and interests in the property conveyed, without the consent, or acquiescence, of the mortgagor. (p. 584).

2. SUBROGATION—*Rights of Second Mortgagee—Payment of First Mortgage.*
   If at the time of such mortgage the property conveyed be

subject to a prior mortgage, or deed of trust, the mortgagee, by virtue of his junior mortgage, being the owner of the equity of redemption, may pay off the prior encumbrance or furnish the money or security therefor, and be subrogated to the rights of the creditor in such prior mortgage. (p. 584).

3.  MORTGAGES—*Right of Redemption.*

Where a mortgagor subsequently to the mortgage by himself or his agent obtains from the mortgagee credit or additional loans of money, he will not be permitted, on bill filed, to redeem the property mortgaged, except on condition of repaying the debt originally secured and the debts and liabilities subsequently contracted, unless the interests of third parties have intervened so as to render it inequitable to deny such redemption. (p. 585).

Appeal from Circuit Court, Raleigh County.

Bill by Amelia G. Webb against E. H. Crouch and others. Decree for defendants and plaintiff appeals.

*Affirmed.*

*A. A. Lilly,* for appellant.

*File & File,* for appellees.

MILLER, JUDGE:

The decree appealed from found as facts alleged and proven, that the deed of January 29, 1906, calling for fifty acres of land, from plaintiff, Amelia C. Webb and F. M. Webb, her husband, to defendant, A. P. Farley, though on its face an absolute deed, was in fact a mortgage given to secure to Farley the payment of $105.00, represented by the note of Webb and wife to him; that the deed of February 10, 1906, from said Farley and wife to defendant Crouch, also absolute on its face, operated as an assignment of said mortgage to Crouch, and that the subsequent loan of $500.00, obtained by said F. M. Webb from the Citizens Bank of Beckley, endorsed by said Crouch, as set up in his amended and supplemental answer, was authorized by plaintiff, and secured by him at her instance and request and for her benefit, and was afterwards adopted and ratified by her, and that the money was expended for her benefit; and, therefore, that she was not entitled to have said land reconveyed to her by said Crouch, except upon condition of the re-payment to him of

the said sum of $500.00, with accrued interest. And by said de-
cree the court also proffered leave to plaintiff to amend her bill,
so as to tender to said Crouch said sum, which was declined.
Whereupon the court being of opinion that she was not entitled
to the relief prayed for, adjudged, ordered and decreed that her
bill be dismissed, but without prejudice to thereafter redeem
said land upon payment of said loan, and its accrued interest.
And there was also a decree against plaintiff in favor of defen-
dants for costs.

The record shows that at the time Webb and wife conveyed
the land to Farley, it was subject to a prior deed of trust, in
favor of one Sarrett, to secure payment of another note exe-
cuted by them for $225.00, so that the effect of the deed to
Farley was to convey to him their equity of redemption only.

The allegations and theory of the plaintiff's bill were, that
the debts so secured were primarily the debts of her husband;
that the deed from Farley and wife to Crouch, not authorized
by her, was invalid, as against her rights under a defeasance
contract, executed by Farley, and that as she was not a party to
the contract by which her husband had obtained the loan of
$500.00 from the bank, through Crouch, upon the latter's en-
dorsement, though upon the credit of the land to which he had
so acquired the title, she was entitled to have the land recon-
veyed to her by Farley or by Farley and Crouch, free of incum-
brances, and free of any claim of Crouch to be repaid the money
for which he had thus become bound by his endorsement, re-
gardless of the fact that the debt due Farley and the prior deed
of trust to Sarrett had been paid off and discharged out of that
loan.

Farley proves that the deed was originally made to him, to sell
the land or the mineral rights, and to obtain the money with
which the grantors might pay off their debts, but that failing to
secure a purchaser, he had subsequently executed the defeasance
contract referred to, and thereafter, for the further protection
of the grantors and to secure his own debt, had conveyed the
land to Crouch, taking from Crouch in favor of the plaintiff a
similar defeasance contract to the one he had executed. The
fact that the deed recites a consideration of $600.00, in hand
paid, tends to support Farley's testimony. It is conceded that

out of the loan so obtained through Crouch the Farley debt and the Sarrett debt had been paid; that $100.00 thereof had been placed to the credit of plaintiff's daughter in bank, to be used in an effort to secure the release of a son from imprisonment, and that the residue of the money had been used by plaintiff and her husband in paying off other debts.

While it is conceded that plaintiff was not personally present, and participating with her husband in his transaction with Crouch, both virtually admit that in consequence of their indebtedness they had previously talked the matter over, and that she had agreed to become his surety to obtain the money from some one, not distinctly mentioned, to enable her to get back the title to the land and use it as security to raise the money necessary to discharge their debts, and secure funds to pay the expenses of obtaining the release of their son from prison. Plaintiff admits that she knew of the deed from Farley to Crouch some two years before she brought her present suit, and that she had made no objection thereto, or given any notice of her claim either to Farley or Crouch, and that her husband had obtained the loan of $500.00 through Crouch, without any complaint or notice from her to Crouch, repudiating the contract of her husband with him.

After having carefully considered all the evidence, with due regard to the issues presented by the pleadings, we are fully satisfied that the decree below is plainly right, and ought to be affirmed. Although plaintiff denies the authority of her husband to bind her for the loan obtained through Crouch, and his oral testimony to some extent tends to support her contentions, yet both admit that such a loan was contemplated, and that both were to become bound as principal and surety therefor; besides their prior and subsequent acts and conduct, and the use made by them of the money obtained on said loan are inconsistent with their theory of want of authority in the husband; and we agree with the court below, that if plaintiff's husband was not specifically authorized to contract with Crouch his general authority was ample for the purpose, and that both having accepted the benefits of the contract, the land became bound for the loan, and that Crouch is entitled to hold the legal title thereto until he is made whole.

The rights of the defendant Crouch to hold the land as security must be determined not only by reference to his contractual rights with the parties, but also with due regard to his legal status respecting the title. The deed to Farley being a mortgage in fact, Farley had the lawful right, and the effect of his deed to Crouch was to sell and convey to Crouch all his right, title and interest in the land, which was the equity of redemption invested in him, by the deed from the plaintiff and her husband, subject of course to the defeasance contracts executed by Farley and Crouch. Farley did not require the consent and acquiescence of plaintiff or her husband to sell and convey his mortgage interest to Crouch. This proposition we think fully supported by authority. *Southern Bldg. & Loan Assn.* v. *Page,* 46 W. Va. 302.

This being so Crouch was not a stranger to the title. Holding by the deed from Farley and wife he was owner of the equity of redemption, and was entitled to redeem the land from the prior mortgage or deed of trust, and to be subrogated to the rights of the creditor. The transaction between Webb and wife and Crouch, as we understand the evidence, did not actually take that form, but Crouch furnished the money, or the security or means by which the money was obtained and the debts secured by the prior deed of trust and the mortgage debt to Farley were paid. The evidence is not as clear as it ought to have been on this subject. Crouch says he gave a check upon the bank for the money; Webb says he got the money at the bank, and his evidence may imply, though he does not distinctly say so, that his note endorsed by Crouch was discounted by the bank, and the money procured in that way. The cashier of a liquidating bank testified, that the books of the Citizens Bank did not show that the note had been discounted. If, as Crouch swears, he gave a check to Webb, he probably took the note and held it for collection on the bank. We do not see, however, that the form of the transaction is material. The decree appealed from as we have seen decreed that the money was due Crouch; he was payee and endorser of the note, and there is no complaint of the decree on this score. The rule seems to be, that where one discharges the debt of another, or out of whose money such debt has been discharged, he is entitled by subro-

gation to the rights of the creditor. *Iron Co.* v. *Wilder,* 88 Va.
942; 27 Am. & Eng. Ency. Law, 203, 204, and notes; *McNeil* v.
*Miller,* 29 W. Va. 480.

Another proposition, well supported by authority, and jus-
tifying the decree appealed from, is, that where a mortgagor,
subsequently to the mortgage, obtains from the mortgagee a
subsequent advance or loan of money on the faith of the mort-
gage, he will not be permitted on bill filed to redeem the mort-
gaged property, except upon condition of paying the debt origi-
nally secured, and the debts subsequently contracted, unless the
interest of third parties have intervened. 20 Am. & Eng. Ency.
Law 966; 11 *Id.* 230, 231; *Cupp* v. *Lester,* 104 Va. 350; *Shirras*
v. *Caig,* 7 Cranch 35; *Lee* v. *Stone,* (Md.) 23 Am. Dec. 589;
*McMillan & Son* v. *Jewett,* 85 Ala. 476. In 20 Am. & Eng. Ency.
Law, *supra,* it is said: "Where a person entitled to redeem comes
into equity seeking that relief, it is now the established rule, in
the absence of statutory provisions to the contrary, that he must
pay not only the mortgage debt and interest thereon, but also all
other debts due from him to the mortgagee, although unsecured
by the mortgage; the principle upon which the court proceeds in
imposing this condition being that 'he who asks equity must do
equity'." This rule has been applied in the case of a married
woman, who gave a mortgage on her separate estate to secure a
debt which she had contracted, and afterwards obtained a fur-
ther loan from the mortgagee. *Woodson* v. *Perkins,* 6 Grat.
346. And the rule is particularly applicable where, as in this
case, the mortgage has taken the form of an absolute deed. *Mc-
Millan* v. *Jewett, supra;* 27 Cyc. 1375. These authorities hold,
in the class of cases just referred to, that no form of deed is
necessary even to convey the equity of redemption to the mort-
gagee, "but this may be accomplished by a parol settlement and
agreement of the parties, with a surrender, cancellation, or de-
struction of the instrument of defeasance, or may be establish-
ed by any circumstances showing that it would be inequitable to
allow the grantor to redeem." 27 Cyc. 1375; *Scanlan* v. *Scan-
lan,* 134 Ill. 630.

For these reasons we are of opinion that the decree below was
right, and that it should be affirmed.

*Affirmed.*