## HUBER v. GLENROCK STATE BANK ET AL.*
### (No. 1173; February 3, 1925; 231 Pac. 63.)
### (Rehearing Denied 234 Pac. 31)

MORTGAGES—PARTNERSHIP CHATTEL MORTGAGE—DEED GIVEN FOR SE-
CURITY—VENDEE OR MORTGAGEE IN POSSESSION—VENDOR AND PUR-
CHASER—APPEAL AND ERROR.

1. Neither 'an action in ejectment nor a statutory action to
recover possession of property can be brought against
mortgagee in possession; the remedy being an action to
redeem.

2. Evidence held to prove that wife of one of partners who
executed chattel mortgage was not a member of the firm
at time of the execution, as against contention that mort-
gage was 'void because not signed by her as a partner,
under Comp. St. 1920, Sec. 4684.

3. Where vendor executed a deed to purchasers and purchasers
executed chattel mortgage and a quitclaim deed to b'ank
to secure loan as part of the same transaction, the quit-
claim deed conveyed the property, although acknowledged
before delivery of vendor's deed to purchasers.

4. Where owners of mine executed chattel mortgage and quit-
claim deed to bank to secure lo'an, and the bank pur-
chased the property at·chattel mortgage foreclosure sale
and without foreclosure of quitclaim deed transferred
the property so purchased and the land, by quitclaim deed
to the third party for an 'amount in excess of the amount
of the loan, the third party acquired the bank's rights as
mortgagee, in view of Comp. St. 1920 Sec. 4581.

5. Where owners of mine executed chattel mortgage and quit-
claim deed to bank to secure loan, and the bank 'after pur-
chasing the personal property at chattel mortgage fore-
closure sale without foreclosure of quitclaim deed, con-
veyed property and land by quitclaim deed to third party,
and where owners did not operate mine, and circum-
stances were such that third person in good faith be-
lieved that they did not intend to operate it, third per-
son, after taking possession and proceeding to operate
mine, was not a trespasser, but was a mortgagee in pos-
session.

6. Deed, with disqualified witness, would be good between the
parties.

7. Mortgagor's purchaser, who took deed with knowledge of rights of mortgagee in possession, took subject to such rights.

8. Chattel mortgage with disqualified witness was valid between the parties, especially in view of Comp. St. 1920, Sec. 4696.

9. Admission of county records to prove execution of deeds held harmless, where the deeds were also introduced in evidence.

ON PETITION FOR REHEARING

10. The Supreme Court will not review facts if there is substantial evidence to support trial court's finding, although Supreme Court might come to conclusion different from that of trial court.

*NOTE—See Headnotes—(1) 27 Cyc. p. 1030; 4 C. J. pp. 878, 880. (2) 30 Cyc. p. 412; (3) 18 C. J. p. 217; 27 Cyc. p. 1135; (4) 27 Cyc. pp. 1292, 1307; (5) 27 Cyc. p. 1236; (6) 18 C. J. p. 194; (1926 Anno); (7) 39 Cyc. p. 1709; (8) 11 C. J. p. 479 (1926 Anno) (9) 4 C. J. p. 983.

APPEAL from District Court, Converse County; CYRUS O. BROWN, Judge.

Action by Paul Huber against the Glenrock State Bank and others. There was a judgment for defendant and plaintiff appeals.

*S. E. Phelps* for appellant.

The Court erred in excluding the testimony of witness Omstead as to prices obtained for coal, the action being for damages; Sunnyside Etc. Co. v. Reitz, 14 Ind. 478; 43 N. E. 46; Woodenware Co. v. U. S. 106 U. S. 132. The Court erred in excluding testimony of appellant as to conversations had with officers of the bank relating to its security; appellant was entitled to recover attorney's fees; the Court erred in excluding evidence of arrests of plaintiff's employees at the mine. The Court erred in excluding important record evidence tending to establish plaintiff's title. The chattel mortgage covering partnership property was not executed by all of the partners; 4684 C. S. the chattel mortgage foreclosure was void, 4707 C. S. The Court erred

in receiving the quitclaim deed executed to the bank, the same not being properly executed, 4589 C. S. 8 R. C. L. 18; Ames v. Parrott, Nebr. 86 N. W. 503; Dunavan v. Co. (N. D.) 80 N. W. 772. The instrument carried no after acquired rights, 4618 C. S. Balch v. Arnold, 9 Wyo. 17; having been pleaded as an absolute conveyance it should not be considered as given for security; the chattel mortgage was void. Thomas v. Schmitz, 15 Wyo. 181; Lellman v. Mills, 15 Wyo. 149; Ridgely v. Bank, (Wyo.) 75 Fed. 805; the chattel mortgage foreclosure was void for insufficient notice, 4705 C. S. the instrument itself was void for want of proper execution; Boswell v. Bank, 16 Wyo. 179. The quit claim deed was not delivered and was of no effect; Bowers v. Cottrell (Id.) 96 Pac. 936; Showalter v. Spangle (Wash.) 160 Pac. 1032; Fitzgerald v. Goff, 99 Ind. 28; Vol. I Devlin, R. E. 263-267. The bank cannot be considered a mortgagee in possession; Howell v. Leavitt, 95 N. Y. 617; I. Jones Mtgs. 702; Bowen v. Brogan (Mich.) 77 N. W. 942; McClory v. Ricks (N. D.) 88 N. W. 1042; the bank was a wilful trespasser; Cosgriff v. Miller, 10 Wyo. 19; intentional trespass supports judgment for permanent injury plus highest market value of the product severed between the time of severance and conversion without reduction for labor expense; Sunnyside Co. v. Reitz, supra; Woodenware Co. v. U. S. supra; Benson Co. v. Alta Co., 145 U. S. 428. Defendant Omstead took possession without right, and invoked criminal statutes of the state to oppress plaintiff; he was guilty of malicious trespass. The judgment should be reversed with directions to enter judgment for plaintiff for possession and damages.

*C. Leonard Smith* for respondent.

Appellant's brief contends for relief different from that prayed in his petition; he seeks to recover possession of personal property and damages in an equitable proceeding; the chattel mortgage was properly executed, 4516 C. S. it was signed by all of the partners, 4684 C. S. the foreclosure sale was in view of the property, 4705 C. S. the conveyances

were one transaction, 18 C. J. 216; the quitclaim deed passed all present interest, 18 C. J. 188; Balch v. Arnold, 9 Wyo. 17, 59 Pac. 434; the quitclaim deed was absolute, 27 Cyc. 1029; it cannot be urged as mere security against a bona fide purchaser without notice, 27 Cyc. 4; an original grantor has no right of redemption; Tufts v. Tupley, 129 Mass. 380; Kemp v. Small, 49 N. W. 169. On the question of innocent trespass the cases cited in 79 A. L. R. page 908 are submitted.

*S. E. Phelps* in reply.

The bank and not the Platte Valley Coal Co. was in possession in December 1921 as shown by the evidence. Attorney's fees may be allowed in connection with exemplary damages, 17 C. J. 808; grantee in a deed is not a competent attesting witness thereto; Craft v. Thornton, 125 Ala. 391; the chattel mortgage was not renewed, 4697 C. S. The bank received no after acquired title under the quitclaim deed; Mathews v. Nefsey, 13 Wyo. 458; nor could it be a mortgagee under said deed since it contained no covenant of title, enjoyment, or right to convey; it merely conveyed contingent interest and no covenant is to be implied, 4582 C. S. In trespass all who participate in the wrongful act are liable, 26 R. C. L. 38; Donavan v. Co., 187 Ill. 28; the judgment should be reversed with instructions to render a judgment in favor of plaintiff for possession and damages.

BLUME, Justice.

This is an action to recover possession of lot 8, situated in the NE¼ of the SW¼, Sec. 4, T. 33 N, R 75, in Converse County, Wyoming, and certain personal property and equipment used in connection therewith and for damages for coal mined from the land and waste committed thereon. The district court rendered judgment for the defendants, from which the plaintiff appeals.

The court was, by the evidence, warranted in finding the following facts: The land in question is coal mining property and was bought by William Skinner and Richard

Barnard, a partnership, doing business under the name of Platte Valley Coal Company, from the Glenrock Coal Company, whose office was apparently located in Denver, Colorado, for, it seems, the sum of $1500. The date of this purchase does not appear. $500 of the purchase money had apparently been paid, but there remained due to the Glenrock Coal Company on December 8, 1920, the sum of $1000. In order to pay the amount so due, and to buy some equipment for the mine, said partnership made arrangements with the Glenrock State Bank, of which the defendant F. O. Carson was cashier, to borrow the sum of $1718.93. The Coal Company above mentioned transmitted to said bank a deed for said property made to said partnership. Said deed is dated December 8, 1920, and the letter of transmittal December 8, 1920. The final payment to said coal company was made by said bank on December 14, 1920. In order to secure said loan from said bank said partnership executed to said bank a note for $1718.93, due April 7, 1921, and a chattel mortgage covering the personal property and equipment connected with said coal mine. Said chattel mortgage is dated December 7, 1920, and purports to be acknowledged on the same date. It is signed and acknowledged by both of said partners, Richard Barnard and William Skinner, and purports to be executed by them. It was also signed by Mrs. Rose Skinner, wife of William Skinner, but the body of the chattel mortgage does not contain her name, nor did she acknowledge it. A quitclaim deed to said land was also given to said bank about the same time. It, too, purports only to be executed by said Richard Barnard and William Skinner, but Rose Skinner also signed as well as acknowledged it along with the others. It is dated December 7, 1920, and purports to be acknowledged on December 9, 1920. It was taken, as stated by said cashier, to "protect the bank," and is claimed by plaintiff to have been for additional security only, and that it is, accordingly a mortgage. Both of said instruments are witnessed by said cashier. In the fall of 1921 said bank be-

came anxious to have the indebtedness above mentioned paid. Said coal mine was being worked but little and the bank tried to get said partners to turn said property over to a third party for the amount of the indebtedness against it, but this the said partners refused to do. Said bank accordingly proceeded to foreclose said chattel mortgage, selling the property mentioned therein on November 10, 1921, after due advertisement, to the Glenrock State Bank for the sum of $723.75. No foreclosure proceedings were had under said quitclaim deed given to said bank. On December 3, 1921, the latter transferred said property to the defendant C. L. Omstead for apparently the sum of $2500, the land by quitclaim deed, and the personal property by bill of sale containing a warranty of title. In the meantime said partners had given a mortgage on said land, in the sum of $200, to one Fred Budden, which said mortgage said defendant Omstead paid in order to clear his title. About December 5, 1921, the latter took possession of all of said property and commenced to mine coal from the land and continued to do so up to the time of the trial. On January 25, 1922, said Richard Barnard, William Skinner and Rose Skinner executed a warranty deed to all of said real and personal property to the plaintiff, Paul Huber, under an agreement that should the latter obtain a clear title to said property he was to pay to the grantors the sum of $2000. On the next day plaintiff, who prior to said purchase knew of the claim of defendants, demanded possession of said property and about 6 o'clock on the following morning, before the men occupied in the mine had arrived, attempted to dispossess the defendant Omstead therefrom, by the aid of several men, who, however, were thereupon arrested and taken from the mine. This action was commenced on March 31, 1922. Other facts will hereafter be stated in connection with the discussion of the several questions raised herein.

1. We might say in passing that it has not been explained to us upon what theory Carson and the Glenrock

State Bank were made parties herein.  These defendants were not in possession of the premises in question, did not claim to have any rights therein at that time, did none of the mining on the land and committed no waste, if any was committed.  It is not claimed that Omstead was their agent and it is difficult to see upon what theory they could be held jointly liable with the defendant Omstead. We do not pass upon the question, but state these facts merely in order that our discussion herein may be simplified.  The rights of the defendant Omstead were derived from the bank and it will be necessary to discuss the rights which the latter had only because of that fact.  The question as to whether or not Omstead was a purchaser in good faith, for value, and without notice of any defects, if any, in the title of the bank, has not been clearly presented, and we shall not enter into any discussion of that subject.  The title of Omstead is based, as has been noticed, upon a chattel mortgage as well as upon a quitclaim deed given to the bank, and upon a quitclaim deed and bill of sale given by the bank to him.  The plaintiff contended in the trial below and now contends that the quitclaim deed given to the bank was never signed or delivered by said partners.  There is ample evidence in the record, however, to sustain the contrary view evidently adopted by the trial court.  It is further contended by plaintiff that if the deed was executed it was given for security only.  It may be a question whether plaintiff can set up a claim of that kind in a suit to recover the property.  See Ladd v. Ladd, 22 Ill. 43, 96 N. E. 561.  But we need not decide the point and prefer to rest our decision upon the assumption that the deed was in fact given for security only.  It is defendant's contention that in such case Omstead is at least a mortgagee in possession.  That is the main question in the case, for if that is true plaintiff cannot bring an action in ejectment, or the statutory action to recover possession of the property, and is confined to an action to redeem, to which the present action bears

no semblance. Green v. Thornton, 8 Cal. App. 160, 96 Pac. 382; Cameron v. Ah Quong, 175 Cal. 377, 165 Pac. 961; Sheridan v. Southern Pac. Co., 179 Fed. 81; Bilger v. Numan, 199 Fed. 549; Becker v. McCrea, 193 N. Y. 423, 86 N. E. 463, 23 L. R. A. 754; 1 Jones on Mortgages, Sections 715 and 716; 27 Cyc. 1030. That principle would, no doubt, be applicable in a case like the present in which real as well as personal property is sought to be recovered. Before proceeding to discuss the main question, however, it is first necessary for us to determine whether the chattel mortgage and quitclaim deed given to the bank have any validity, and whether Omstead is the successor in interest of the bank.

2. It is contended that the chattel mortgage given to the bank on December 7, 1920, is invalid by reason of the fact that not all of the partners signed and acknowledged it, and our attention is called to Sec. 4684, W. C. S. 1920, which provides in part as follows:

"It shall be necessary for each and every member of a co-partnership to execute and acknowledge a mortgage, bond, conveyance or other instrument intended to operate as a chattel mortgage for and on behalf of the co-partnership."

It is claimed that Rose Skinner, wife of William Skinner, was a partner in the partnership of Platte Valley Coal Company at the time of the execution of the chattel mortgage and deed to the bank. We think, however, that the evidence in the case was such as to warrant the court in concluding, as it evidently did, that she was not a partner at that time. The deed to the partnership, dated December 8, 1920, was made to "Richard Barnard and William Skinner, doing business as the Platte Valley Coal Company." According to the testimony of the cashier of defendant bank, Mrs. Skinner was not known as a partner even as late as the fall of 1921, and that she was asked to

sign the chattel mortgage and deed to the bank merely because it was customary to have wives sign instruments executed by their husbands. William Skinner testified that his wife became a partner shortly after the partnership received its deed from the Glenrock Coal Company, and since that deed was not delivered, as the evidence tends to show, until December 14, 1920, it would seem clear, according to this testimony, that Mrs. Skinner did not become a partner until at least after the chattel mortgage and deed were delivered to the bank. Mrs. Skinner, it is true, testified that she became a partner in November, 1920, but her testimony is uncertain and contradictory and part of it may well be understood to mean that she did not become such partner until about December 20, 1920.

3. It is contended in the next place that the quitclaim deed given to the bank, purporting to be acknowledged on December 9, 1920, could only convey the interest which said partners had in said land at that time; that on said date the deed from the Glenrock Coal Company to said partners had not been delivered and hence no interest in said land whatever was conveyed by the deed given to said bank. It would seem, however, that said partners had an equitable interest in said land before December 9, 1920, for they apparently had bought it prior to that time and had paid $500, or a third of the purchase price, thereon. We may waive that point, however. The testimony is not altogether clear just when the deed to the bank was actually signed and acknowledged. But there is ample testimony in the record, we think, to sustain the view that all the papers, namely, the deed from the Glenrock Coal Company to said partners and the deed as well as the chattel mortgage from said partners to said bank, were all finally delivered on December 14, 1920, and that the dealings in connection therewith were all intended to constitute but one transaction, and the various branches thereof were intended to be consummated at the

same time. It is held that where two or more deeds are made simultaneously and are so connected that they may be regarded as a single transaction, they will be held to take effect in such order as will carry out the intention and secure the rights of the respective parties. 18 C. J. 216; Crabtree v. Crabtree, 136 Iowa 430, 113 N. W. 923, 15 Ann. Cas. 149; Pomeroy v. Latting, 15 Gray (Mass.) 435; Loomis v. Pingree, 43 Me. 299. We think that the case at bar fairly- comes within the spirit of this rule and that it was not the intention to convey an empty title by the deed given to the bank, but the interest which the partnership acquired from the Glenrock Coal Company.

4. The debt to the bank became due in April, 1921, but was not paid, and while the bank foreclosed the chattel mortgage in November, 1921, it was evidently under the impression that it was not necessary to foreclose the deed given it. So far as we can learn from the record, both the bank as well as Omstead, its successor in interest, believed in good faith that they had the right of possession of the land under the deed to the bank, without any foreclosure. The bank sold both the land as well as the chattels to Omstead and while there can be no doubt that the latter succeeded to all the rights which the bank had in the chattels, the question arises as to what right Omstead acquired under the deed from the bank, assuming that the latter was a mere mortgagee and that Omstead could not acquire a greater right than the bank had. Not much light has been thrown upon this question by the briefs of the parties filed herein. Had the deed to the bank been a regular mortgage, and had a regular, valid assignment thereof together with the debt secured thereby been made, the assignee would have acquired all the rights, claims and equities possessed at the time by the mortgagor. 27 Cyc. 1307. So, too, had the debt owing to the bank been transferred to Omstead when he received his deed, he would have succeeded to all the rights of the former. 2 Jones, Mortgages, Sec. 808. But there is no evidence in the record of the transfer of

such indebtedness. In jurisdictions where a mortgage is considered as conveying the legal title, it is held that a deed of conveyance by the mortgagee to a third person passes not only the legal title, but also all of his interest in the mortgage, and therefore operates as an assignment of the debt secured. 27 Cyc. 1291; Collamer vs. Langdon, 29 Vt. 32; Stark vs. Boynton, 167 Mass. 443. In the last case cited the court seems to hold that the only effect of the failure to include the note in the sale by the mortgagee, is that it might leave the conveyance ineffectual against a previous purchaser of the debt who has a prior unrecorded assignment of the mortgage security. Other cases hold, without entering into a discussion of the reasons therefor, that where land is mortgaged by an absolute deed intended as security, a conveyance, by absolute deed, of the premises by the mortgagee to a third person amounts to an assignment of the mortgage, the grantee being substituted to the rights of the mortgagee. De Clerq vs. Jackson, 103 Ill. 658; McMillan vs. Davenport, 44 Mont. 23, 118 Pac. 756, Ann. Cas. 1912 D 984; Halsey vs. Martin, 22 Cal. 645; Eiseman vs. Gallagher, 24 Neb. 79; Wells vs. Crouch, 70 W. Va. 580, 74 S. E. 730, Ann. Cas. 1914 A 728, 2 Jones Mortgages Sec. 808; 27 Cyc. 1201, 1202. We surmise, however, that at least some of these cases were decided upon the theory that an absolute deed, though given merely as security conveys the legal title, as is held by the courts in a number of states. 1 Jones, Mortgages, Sec. 342 c, 27 Cyc. 1029, 1031, and see Givan v. Doe, 7 Blackf. (Ind.) 210. But that point has not been argued and we prefer not to pass upon it, and considering the bank in the case at bar as having acquired a lien only and not the legal title, we are confronted with the rule laid down in many cases that until foreclosure or entry after condition broken, a mortgagee has no interest in land capable of being conveyed, and that a conveyance by him passes no interest· in the mortgage. The reason given is that the mortgage is a mere incident to the debt, remains personal property, and the debt draws the mortgage to it.

Hawley v. Levee, 66 Misc. Rep. 280, 123 N. Y. S. 4; John-
son v. Lewis, 13 Minn. 364; Greve v. Coffin, 14 Minn. 345;
Clark v. Clark, 56 N. H. 105; 2 Jones, Mortgages, Sections
804 and 808; 27 Cyc. 1291. This was held to apply in a
case where a deed had been given as security, with a de-
feasance back. Hill v. Edwards, 11 Minn. 22. The rule
is, however, subject to exceptions, and is held not to apply
if it was the intention of the parties that the debt was to be
transferred along with the conveyance, or if the grantee in
such conveyance should be held to be estopped from claim-
ing that such debt was not transferred and the purchaser
should in equity be held to be subrogated to the rights of
the mortgagee. 27 Cyc. 1291; 2 Jones, Mortgages, Sec.
808. Jordan v. Sayre, 29 Fla. 100. In Gottlieb v. City of
New York, 128 App. Div. 148, 112 N. Y. S. 545, it appears
that the town of Gravesend, the predecessor in interest of
the City of New York, sold a certain lot in 1884, taking
back a mortgage for part of the purchase money. In 1885,
the town gave to plaintiff a deed of all its rights title and
interest in the same premises. In 1893, the mortgage above
mentioned was foreclosed, the city becoming the purchaser
at the foreclosure sale. The court said:

"When the town conveyed to the plaintiff it did not own
the land, but only a mortgage thereon. The deed of con-
veyance was without covenants, but it operated to assign
the mortgage to the plaintiff, and therefore the foreclosure
of the mortgage by the city  *  *  * and the purchase by
the said city on the foreclosure for the amount due on the
mortgage, must be deemed to have been done as trustee for
the plaintiff."

In Felker v. Mowry, 69 N. H. 164, the court said:

" 'Equity will give effect to the real intentions of the par-
ties, as gathered from the objects of the instrument and the
circumstances of the case, although the instrument may be
drawn up in a very inartificial and untechnical manner'

(1 Str. Eq. Jur. s. 168) ; and payment of a mortgage debt by one having an interest to protect, although accompanied by a release from the mortgagee, will operate as an assignment and not as an extinguishment of the mortgage, whenever justice requires it.   Bacon v. Goodnow, 59 N. H. 415, 417; Fletcher v. Chamberlain, 61 N. H. 438, 468, and authorities cited.''

So in the case of Freeman v. M'Graw, 15 Pick. (Mass.) 82, the court in referring to the previous case of Hunt v. Hunt, 14 Pick. 374, said:

''The court there held, substantially, that according to established rules of law, where there is a manifest intent to convey an estate by deed, but where, owing to the want of some requisite, or the intervention of some rule of law, it cannot operate in the manner intended, it shall operate in some other manner to carry into effect the intent of the parties, if it can.''

See also Collamer v. Langdon, supra.

Looking at the facts in the case at bar, we find that the deed given by the bank to Omstead was given for a consideration of $1000, as recited in the deed; that all of the property which the bank held was sold to Omstead for $2500, an amount sufficient to satisfy all of the indebtedness of said partnership to said bank. A quitclaim deed under our statute operates the same as a deed of bargain and sale.   Sec. 4581, W. C. S. 1920.   It is clearly apparent that the bank did not intend to convey a mere empty title to Omstead, itself retaining the substance, and is here insisting, jointly with Omstead, that the latter should be considered as a mortgagee in possession.   Under these facts we are constrained to hold that Omstead should be treated as possessing the rights which the bank would have had, if the deed to Omstead had not been made at all, and that the latter must be considered as an assignee of the mortgage held by the bank.

5. We come then to the main question already referred to, namely, as to whether or not Omstead was a mortgagee in possession. Counsel for plaintiff contends that a party can become a mortgagee in possession only if the possession by such mortgagee is with the consent of the mortgagor, and a statement to that effect is sometimes found in the books. We do not think, however, that the rule is quite so rigid. If the entry is but a trespass without force, or is made forcibly, then of course no rightful possession could be obtained against the mortgagor or his grantee. In a number of cases it is said that the entry by the mortgagee must be lawful. Gillett v. Eaton, 6 Wis. 30; Tallman v. Ely, 6 Wis. 244; Faxon v. All Persons, 166 Cal. 707, 137 Pac. 919; L. R. A. 1916 B. 1209; Hermann v. Cabinet Land. Co., 217 N. Y. 526, 112 N. E. 476.

In the case of Barson v. Mulligan, 73 N. Y. S. 202, it was said:

"The only question, therefore, that can arise as to the right of a mortgagee in possession to hold the premises until the mortgage debt is paid, depends upon the method by which she obtained possession, and it is claimed that that possession must be with the assent of the mortgagor; but I can find no authority limiting the right of a mortgagee to hold property of which he is in lawful possession to a case where such possession was with the consent of the mortgagee * * * What is essential to entitle a mortgagee to hold possession of the premises until his mortgage debt is paid is that his possession should have been lawfully acquired. If under a deed which purports to convey a title, a mortgagee enter into possession, although that deed is void, he is entitled to maintain possession until his mortgage debt is paid."

In 2 Jones on Mortgages, Sec. 715, it is said:

"It is not essential to the status of a mortgagee in possession that possession should have been taken under the mortgage, nor with the consent of the mortagor. It is enough if the possession be peaceably and legally acquired."

In Cameron v. Ah Quong, supra, it was said:

"If the mortgagee obtain possession in any peaceful mode, he may retain it against the mortgagor's or the latter's assignee until the mortgage debt is paid. Casse v. Cooper, 18 Or. 142, 22 Pac. 945; 7 A. L. R. 273, 17 A. S. R. 709."

The question is discussed exhaustively in the case of Stouffer v. Harlan, 68 Kan. 135, 74 Pac. 610, 64 L. R. A. 320, 104 A. S. R. 396. There the court, in referring to the reasons of the rule that a mortgagee should not be ousted from possession until the mortgage debt is paid, comes to this conclusion:

"It is obvious that such reasons apply to all cases in which the mortgagee has actual possession of the mortgaged property, except where he has acquired it under such circumstances that it would be inequitable to permit him to assert a right under it. The expression frequently used, that the entry must be lawful, we interpret to mean not that it must have been effected under a formal right capable of enforcement by legal proceedings, but that it must not be through any unlawful or wrongful act, upon which the mortgagee would be estopped to found a right. The importance given to the matter of consent or acquiesence of the mortgagor we conceive to be derived, not from the idea of establishing a contract (since, as already suggested, if a contract for possession exists, there is no occasion to invoke the rule) but from the fact that it frees the mortgagee from any suspicion of having obtained possession by fraud or force. We conclude that the true rule is that, when the mortgagee is in possession of the mortgaged premises after

condition broken, he may not be dispossessed without a payment of the mortgage debt, unless his possession was acquired under such circumstances that he ought not, in equity, to be permitted to retain it.''

We do not see how we could state the rule better than was done in the case last cited. The testimony in the case at bar is not as clear as it might be on the point in question, and some of it appears to uphold the contention of counsel for plaintiff that the entry by Omstead was made under circumstances indicating it to have been a trespass. Other testimony, however, tends to show the contrary. Omstead, as stated before, apparently believed in good faith that he had the right to take possession of the property in question. Not a great deal of mining had been done on the land. Both of said partners had been mining coal on other land and for other parties, and there were circumstances which evidently caused the bank and Omstead to believe that said partnership did not intend to pursue coal-mining on the land in question. If anyone was in actual possession of the prpoerty at all or took coal therefrom, it was Barnard, but his testimony as to the manner of occupancy at the time and immediately prior to the time that Omstead took possession, or the amount of coal that was being mined from the land, is unsatisfactory, although the facts were fully within his knowledge. Omstead testified at one time, although he contradicted himself at another, that no one was in possession when he went upon the land about December 5th or 6th, 1921. Barnard's testimony, too, was not altogether consistent, but we quote the following from his testimony:

''Q. And the first time you had any knowledge of their, or either one of these parties claiming any interest in the real estate that the mine was located, was at the time, or subsequent to the time of your arrest? A. Well, Mr. Omstead came over there to the mine, and he told me he was going to take possession, and of course I couldn't tell him right then 'no,' but I went home then, and the next morn-

ing Mr. Jackson come down and read a warrant to me. Q. Will you state to the court the conditions under which you were so dispossessed that you speak of? A. I just know— Mr. Omstead come over there and said he was going to take possession—he just told me he come over there and was going to take possession. Q. Did he tell you why? A. Said he bought it. Q. Did he—did you say anything to him at that time? A. I just told him all right, I guess it was his then, I would have to go home."

The court evidently construed the foregoing testimony to mean that when Omstead asserted what he conceived to be his right under his deed, Barnard voluntarily surrendered possession of the property to him. The next morning the latter was arrested under a warrant charging him with stealing coal. But that took place subsequent to the time that Omstead had taken possession and does not seem to have any bearing on the question whether such possession was peaceably and lawfully taken. We do not, under the circumstances, feel warranted in disturbing the finding of the trial court, necessarily included in its general finding, that the circumstances of the possession obtained by Omstead were not such that he ought in equity to be deprived thereof. It is true that on January 26, 1922, the men whom plaintiff sent onto the land to take possession of it, were arrested and taken to Glenrock. But surely counsel for plaintiff cannot seriously contend that such arrest can aid plaintiff's cause. Omstead had then been in the peaceable possession of the property for six weeks and was daily mining coal from the land. Plaintiff evidently attempted to take forcible possession, and he cannot derive any advantage from the fact that he was prevented by Omstead from doing so.

6.    Other points are urged in the brief of plaintiff's counsel, but we need not discuss them at length. Whether or not, for instance, F. O. Carson, the cashier of the bank, was qualified to be a witness to the deed and chattel mortgage

given to the bank is immaterial herein, in view of our holding that Omstead must be treated as a mortgagee in possession. The deed would in any event be good between the parties (Harney, Adm'r., v. Montgomery, 29 Wyo. 362, 381; Boswell v. First Nat. Bank, 16 Wyo. 161, 182, 92 Pac. 625, 629; Conradt v. Lepper, 13 Wyo. 473, 485, 81 Pac. 307, 308), and plaintiff who had knowledge of Omstead's rights and claims took his deed subject thereto. We also think that the chattel mortgage was good between the parties, especially in view of the provisions of section 4696, W. C. S. 1920, which provides that "any such mortgage, bond, conveyance or other instrument intended to operate as a mortgage shall be valid between the parties, anything contained in this chapter to the contrary notwithstanding, until the debt thereby secured is fully paid." That is the general rule. 11 C. J. 511. And inasmuch as Omstead had possession of the property at the time that plaintiff obtained his conveyance, the latter took subject to the former's rights. So, too, the question whether the chattel mortgage was legally foreclosed becomes immaterial, for substantially the same reasons. The point urged that the records of Converse County were erroneously introduced to prove the execution of the quitclaim deeds in question need not be discussed, for the reason that the original instruments themselves were also introduced and if any error was committed, it was without prejudice. Erroneous rulings of the court on the question of damages, too, become immaterial in view of our holding herein. Suffice it to say, that we have carefully examined the record and the briefs and find no reversible error.

The judgment of the district court should, accordingly, be affirmed, and it is so ordered.

*Affirmed.*

POTTER, Ch. J., and KIMBALL, J., concur.

BLUME, Justice.

A petition for rehearing has been filed herein, but no points not fully covered by our former opinion have been brought out. We held that Omstead stepped into the shoes of the bank and acquired whatever rights the bank might have had. Nothing said in the brief of counsel on rehearing has caused us to change our opinion on 'that point, and we think that our discussion of it shows how manifestly unfair it would be to hold the contrary, particularly in view of the fact that the security in this case had been taken in the form of a deed. Hence, Omstead had the right to take possession of the property in controversy exactly in the same manner and under the same conditions as the bank might have done, and it matters not that the bank had not yet taken possession when Omstead acquired its rights. Huber, the plaintiff, took his title, of course, which he did not acquire until January 25, 1922, subject to all the rights which the former then had. So the only question remains whether or not lawful possession was acquired by the former in December, 1921.

Counsel take exception to the cases cited by us as to what constitutes lawful possession by a mortgagee, and concedes that if the law as to mortgages were the same as for instance that of New York, Wisconsin, Kansas and Oregon, from which we cited cases, our conclusion herein would be correct. The theory in all these states is that a mortgage is mere security, as in this state, and that the mortgagee has no right of possession except pursuant to foreclosure and sale. 27 Cyc. 762, 1235; Jones, Mortgages, (7th Ed.) Secs. 30, 44, 47, 57. In Wisconsin the statute provides that no action shall be maintained by the mortgagee for the recovery of possession of the mortgaged premises until the equity of redemption shall have expired. Yet it has often been decided in that state that if the mortgagee, after default, goes into peaceable possession, he cannot be ejected by the mortgagor while the mortgage remains unsatisfied,

and that the only remedy of the mortgagor is by a bill to
redeem. Jones, supra, Sec. 57. The rule is claimed by
counsel to be different in Texas, Michigan, Iowa and Colo-
rado, citing Jones, supra, Sec. 717. The Texas case cited
is that of Morrow v. Morgan, 48 Tex. 304. It does not ap-
pear how the mortgagee obtained possession, and the case is,
therefore, not in point. Nevertheless it seems to intimate
that the mortgagee might lawfully come into possession of
the land by consent, and that even under the circumstances
of that case, the court might "compel the plaintiff to adjust
their (the defendants') equitable claims to the land." None
of the Michigan cases cited by Jones seem to be direct in
point. None of them, so far as we can find, have passed
upon any facts similar to those in the case at bar. In Read-
ing v. Waterman, 46 Mich. 107, 8 N. W. 695, it was held that
where a mortgagor recognizes the rights of a mortgagee
lawfully in possession he cannot eject him "without either
notice or payment." So it would seem that there is no ob-
stacle even in that state to a mortgagee taking lawful pos-
session under the mortgage under certain circumstances.
The cases of Mills v. Heaton, 52 Iowa, 215, 2 N. W. 1112
and Moncrief v. Hare, 38 Colo. 221, 87 Pac. 1082, 7 L. R. A.
N. S. 1001, cited by Jones, are not in point in this case.

There is, undoubtedly, room for argument that Omstead
was not a mortgagee in possession under the principles laid
down by us in the original opinion, in view of the manner
in which possession was obtained, but that was an argument
to be made to the trial court. Under the repeated deci-
sions of this court we will not review the facts, if there is
substantial evidence to support the finding of the trial court,
although, were we hearing the case originally, we might
come to a conclusion different from that reached by the
trial court. While the case may be deemed a close one on
this point, we cannot say that the lower court was so mani-
festly in error as to warrant us in disturbing its finding.
Unless barred by equitable principles, the appellant still
has his action to redeem the land. Surely he could not have

expected to recover possession thereof and hold it permanently without ultimately at least having to pay the indebtedness justly due under the mortgage, assuming, for the purposes of this case that the deed given to the bank was in fact a mortgage.

A rehearing must accordingly be denied.

*Rehearing Denied.*

Potter, Ch. J., and Kimball, J., concur.